## THE MARQUETTE, HOUGHTON AND ONTONAGON RAILROAD COMPANY v. HENRY P. HANDFORD, AD'MR.

*Railroad companies—Contributory negligence.*

Recovery cannot be had for the fatal negligence of a railway company, when the deceased, who was familiar with the locality and knew that trains passed frequently and that they ran irregularly, stood on the track at nightfall, stupified and confused with liquor, before the approaching headlight of a slowly-moving locomotive.

Error to Marquette. Submitted Oct. 18. Decided Oct. 31.

TRESPASS ON THE CASE. Defendant brings error.

*W. P. Healy* for plaintiff in error. Standing on the track before an approaching train is contributory negligence even though the person who does so is absent minded or drunk, *L. S. & M. S. Ry v. Miller*, 25 Mich., 274; *Illinois Central R. R. v. Cragin*, 71 Ill., 177; *Cramer v. Burlington*, 42 Ia., 315; *Harlan v. St. Louis etc. Ry.*, 16 Alb., L. J., 225; *Grows v. Maine Cent. R. R.*, 17 Alb. L. J., 390; a locomotive engineer has a right to

suppose a person on the track will not stay there till the engine reaches him, *Terre Haute etc. R. R. v. Graham*, 46 Ind., 239; and the absence of a flagman cannot be taken as an assurance of safety, *McGrath v. N. Y. Cent. R. R.*, 59 N. Y., 468; *Havens v. Erie Ry.*, 41 N. Y., 296; one is not excused from being careful not to stand in the way of a train by the fact that it is running faster than the local ordinance permits, *St. Louis &c. Ry. v. Mathias*, 50 Ind., 65; *Haines v. Ill. Cent. R. R.*, 41 Ia., 227; *Stackus v. N. Y. Cent. R. R.*, 14 N. Y. (7 Hun), 559.

*Ball & Owen* for defendant in error. The public have a right to rely on the use by a railway company of its ordinary precautions, *D. & M. R. R. v. Van Steinburg*, 17 Mich., 99; *Ernst v. Hudson R. R. R.*, 35 N. Y., 9: 39 N. Y., 61; *Kinney v. Crocker*, 18 Wis., 74; *McGrath v. N. Y. Cent. R. R.*, 63 N. Y., 522; *McGovern v. N. Y. Cent. R. R.*, 67 N. Y., 418; *Kissenger v. N. Y. & H. R. R.*, 56 N. Y., 543.

GRAVES, J. The court below having allowed a recovery of damages against the company on the allegation that John Handford, the intestate of defendant in error, whilst observing due care to keep out of the way of their cars, was by means of their negligence run against and killed, the case has been brought here on writ of error.

The court was asked to instruct the jury against recovery on the ground that upon the undisputed facts relating to the subject, it was established unequivocally that the deceased was not using due care to keep out of the way, and that his own negligence directly contributed to the fatal result. The request was refused and the case was given to the jury in terms implying that a verdict for damages would not be incompetent, and the main question arises on this ruling. Whether there was any evidence for the jury that the company were negligent need not be considered.

The record discloses no special peculiarities to distinguish the case from others where the question of contributory negligence is distinctly presented without any circumstance to qualify it, and the judgments given in the *Lake Shore & Michigan S. R. R. Co. v. Miller*, 25 Mich., 274 and in *Kelly v. Hendrie*, 26 Mich., 256, sufficiently exhibit the views of the court upon the general subject.     No particular discussion is needed.

A brief refence may be made to the chief and undisputed facts relating to the question, which were developed during the trial.

The casualty occurred at the point where the south track of the company's road (there being another running parallel several feet further north) crosses the sidewalk on the west side of Front street in the city of Marquette, and the time was not later than 9 o'clock in the evening of July 12th, 1875. The defendant in error swears it was "about twilight." The deceased was residing and for some time had been, in the vicinity of this crossing, and was familiar with the place and all its features, and knew that engines and cars were there run each way and over switches from one track to the other just north with much frequency and without regard to regularity in respect to time. He was accustomed to pass three, four or five times a day. He was about forty-nine years old and in health, but used spectacles when at work. A flagman was kept there to warn against the approach of trains and he was required to attend two switches near by but on opposite sides of the track. At night a lantern was used to warn with.

Deceased was a boot and shoemaker and was in the service of his son, the defendant in error. He had worked through the day and had started for his home in company with defendant in error. The two having proceeded together as far as Stafford's drug store (which is about 100 feet from the crossing) on their way, which led across the track, the son turned back to do an errand at his shop which they had just left, and after a short absence returned to rejoin his father and then

found him lying on the floor of the drug store and fatally hurt. The accident had occurred during the separation. Deceased was given to drink and was prone to periodical fits of intoxication, and he had been drinking some at this time. His son, however, swore that he knew perfectly well what he was doing.

It was "middling dark." His son having turned back, he went on until he reached a point on the sidewalk in the center of the south track. So far as appears, there was nothing to hinder his crossing without hurry and in perfect safety, but instead of going on, or stepping off of the track on one side or the other, which he had more than ample time to do, he stopped still and remained in the center of the track. An engine with headlight towards him was standing on the north track and over two hundred and sixty feet distant. Another with its headlight the same way was on the south track, being the track in which he was standing, and about as far off as the other engine. The engine on this south track was coming off the ore dock beyond an intervening bridge, and the flagman had just been with his lantern to the switch between the bridge and the east side of Front street and about one hundred and seventeen feet from where deceased had stopped on the sidewalk, and had thrown the switch over to allow the engine to keep to the track on which the deceased stood, and was then going back along the south side of the track in the direction of deceased, the engine being about seventy-five feet behind him and not going fast. On account of the effect of the headlights he was not able to tell which engine was coming until it reached the bridge. At that point, however, he could tell, and the point was at least from 140 to 150 feet distant from himself and some 250 or 260 feet from deceased. After leaving the switch he discovered the deceased standing on the track. "He was doing nothing but standing there, facing the north right up the sidewalk," and according to the witness appeared like one "stupefied."

The flagman instantly ran towards the street and

shouted to him as "loud as he could" and "loud enough to be heard across the street" and swung his lantern, and on getting near the street he jumped across the track ahead of the engine, and the engine then immediately passed him, and by the time he reached the middle of the street it struck deceased at the place where he had continued to stand on the track. The alarm given by the flagman reached the engineer and he then noticed deceased standing still on the track and two other persons near him, and he proceeded at once to reverse the engine and succeeded in stopping it in about twelve feet. The cab of the engine stopped on the sidewalk. The engine was going slow,—so slow that the flagman was able to cross the track in front of it just before and when it was only a few feet from him, and so slow that it could be and was stopped in going twelve feet.

There is nothing in the record to impugn these facts or derogate from them upon the present question, and they make out a plainer case of contributory negligence than appeared in either of the suits above referred to.

The deceased must have known that engines were there run fugitively and with great frequency and that the track where he stopped and remained was not a safe place to stay in as he stayed in it, and he must have been able to see the approach of the engine and in abundant season to get out of the way without hurry and without difficulty, and his want of care can neither be overlooked nor so obscured or depreciated as to justify submission of the case to the jury.

His gross neglect of his own safety which the facts establish can be accounted for only by supposing that he was somewhat in liquor and that his mind partly through that was withdrawn from due attention to the things about him and from the exertion of the care and watchfulness which the place and the circumstances demanded of him. But whatever may be the real explanation, the facts presented by this record are repugnant to recovery.

· The plaintiffs in error were entitled to the instruction which was refused. The other points cease to be material.

The judgment should be reversed with costs and a new trial ordered.

The other Justices concurred.