[Civil No. 148.    Filed August 2, 1886.]

[S. C. 11 Pac. 545.]

## JAMES HOBSON, Plaintiff and Respondent, v. THE NEW MEXICO AND ARIZONA RAILROAD COMPANY, Defendant and Appellant.

1. PROCESS—DEFECTIVE SERVICE WAIVED BY FILING OF ANSWER.—A party having answered, and having had his day in court, should not be allowed to reverse all the procedings because of irregularity in service.

2. APPEAL AND ERROR—HARMLESS TECHNICAL ERROR WILL NOT BE PER-
MITTED TO WORK REVERSAL.—It is a general rule that wherever and
whenever substantial justice is secured, a mere technical error, which
is harmless in character, and which has worked no injury, will not
be permitted to defeat or annul the final conclusion or consumma-
tion of judicial proceedings.

3. BOND IN ACTIONS FOR TORT—FILING BY LEAVE OF COURT—ACT OF
MARCH 8, 1883.—Where a statute, *supra,* was passed within four
days prior to the commencement of suit, requiring filing of bond
for costs at beginning of actions for torts, it was not error for
court to grant leave to file bond thereafter.

4. CONTINUANCE—ABSENCE OF WITNESSES—MOTION FOR CONTINUANCE
PROPERLY OVERRULED WHERE PARTY ADMITS UNDER STATUTE THAT
WITNESS' IF PRESENT WOULD TESTIFY AS STATED IN AFFIDAVITS
FOR CONTINUANCE —COMP. LAWS, 1877, c. 48, p. 433, §160, CITED.—
The motion for continuance on account of absence of witnesses
was properly overruled, inasmuch as plaintiff admitted that the
witnesses, if present, would testify to the facts stated in the
affidavit. Statute cited, *supra.*

5. NEGLIGENCE—PLAINTIFF GUILTY OF DANGEROUS ACT—SUCH AD-
MITTED FACT DOES NOT DEPRIVE HIM OF RIGHT TO HAVE CASE SUB-
MITTED TO JURY—GENERAL RULE AS TO WHAT ADMITTED FACTS
ARE FOR THE JUDGMENT OF COURT—WHERE ULTIMATE FACT TO BE
PROVEN IS TO BE DEDUCED FROM ADMITTED FACTS, CASE SHOULD GO
TO JURY—MOTION FOR NON-SUIT PROPERLY DENIED.—Quere, whether
the plaintiff, in getting upon the car, as stated by himself, was
guilty of an act evidently dangerous, and in so doing was guilty of
such negligence as should preclude him from having a verdict as a
matter of law? It is true, in many cases, that, where the facts
are undisputed, the effect of them is for the judgment of the court,
and not for the decision of the jury. This is true in that class of
cases where the existence of such facts come in question, rather
than where deduction or inferences are to be made from the facts.
In some cases, too, the necessary inference from the proof is so
certain that it may be ruled upon as a question of law. Extreme
cases cited. The range between them is almost infinite in variety
and extent. Upon the facts proven in such cases it is a matter of
judgment and discretion—or sound inference—what is the deduction
to be drawn from the undisputed facts. It is this class of cases and
those akin to it, that the law commits to the jury. Held that this
case should have gone to the jury, and that the motion for non-suit
was properly denied.

6. SAME—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF OF ON DE-

FENDANT—PLAINTIFF MUST ESTABLISH CULPABILITY OF DEFENDANT
BUT NEED NOT PROVE HIS OWN CONDUCT TO HAVE BEEN PRUDENT
—ABSENCE OF FAULT ON PART OF PLAINTIFF MAY BE INFERRED
FROM CIRCUMSTANCES AND DISPOSITION OF MAN TO KEEP OUT OF
DANGER.—Plaintiff having made a *prima facie* case, it was incumbent on defendant to prove a want of care on plaintiff's part
to defeat the action. It is not a rule of universal application that
the plaintiff must prove affirmatively that his conduct on the
occasion of the injury was cautious and prudent. The culpability
of the defendant must be proved affirmatively before the case
can go to the jury; but the absence of any fault on the part of the
plaintiff may be inferred from circumstances, and the disposition of
men to take care of themselves, and keep out of difficulty, may
properly be taken into consideration.

7. FELLOW SERVANTS—LOCOMOTIVE ENGINEER AND TEAMSTER WORKING
ON GRADE—INSTRUCTIONS TO JURY CONCERNING.—Where the plaintiff's business was only to drive teams from the
end of the line for the distribution of ties, and his
work was not directly connected with the locomotive engineer, and
he had nothing whatever to do with him save to be taken to and
from his dinner under orders of his superior, he and the engineer
were not fellow servants within the rule exempting ·the common
employer from liability. Instructions to jury concerning the issue
as to whether plaintiff and engineer were fellow servants reviewed
and held correct.

8. DAMAGES—$15,000 NOT EXCESSIVE—PRACTICE—REMISSION FROM
JUDGMENT.—Where verdict and judgment were for $30,000, and on
motion for new trial the court was of opinion that it was excessive
to the amount of $15,000, and that sum, in open court, was remitted
by plaintiff, and judgment was entered for $15,000, we do not deem
that amount to be too much compensation for the loss of both legs
by a healthy man of middle age.

9. APPEAL AND ERROR—PLEADING—WHERE AFTER GENERAL DEMURRER
AMENDED PLEADING IS FILED TO WHICH NO DEMURRER IS INTERPOSED, NO INSUFFICIENCY WHICH MIGHT HAVE BEEN CURED BY
AMENDMENT CAN BE URGED AS GROUND FOR REVERSAL.—Where defendant demurred generally to the complaint and thereafter an
amended complaint was filed to which no demurrer was interposed,
any insufficiency which might have been cured by amendment may
not now be urged as ground for reversal.

10. PLEADING EVIDENCE—OBNOXIOUS TO SPECIAL DEMURRER.—Evidence
must not be pleaded; only the general or ultimate facts need be

alleged.   Pleading  evidence  bad,  and  obnoxious  to  special demurrer.

11. Negligence—Evidence—Drunkenness of Engineer—Habitual Intoxication—General Reputation as to Recklessness and Drinking Inadmissable.—Evidence that the engineer was drunk or under the influence of liquor, at the time, admissable as part of the *res gestae.* Evidence tending to show that the engineer was habitually intoxicated, and a reckless "runner," competent as tending to show that at the time alleged he handled his engine negligently. Evidence that this engineer was reputed to be a reckless runner, and in the habit of becoming intoxicated, inadmissable.

12. Appeal and Error—Harmless Error in Admission of Evidence.— Where the trial court erred in admission of evidence as to reputation which could only affect the question whether the engine was handled negligently, which question was clearly and overwhelmingly established by competent evidence, such error is harmless as it could not affect the verdict in the case.

Shields, C. J., dissenting.

Dismissed pursuant to the 28th rule.  127 U. S. 795; 32 Law Ed. 331.

APPEAL from a judgment of the District Court of the Second Judicial District in and for the County of Cochise. Affirmed.

The facts are stated in the opinion.

Haynes & Stiles, James Hagerman, and Sumner Howard, for Appellant.

Goodrich & Smith, for Respondent.

Porter, J.   Before entering into the merits of this case it is necessary to dispose of some preliminary questions. The defendant appeared specially, and moved to set aside the service of summons because not made upon the "president, or other head of the corporation, secretary, cashier, or managing agent thereof, or to any lawful agent appointed for that purpose, or any director or stockholder, as required by our statute." The return showed service upon J. H. Scott, agent

of defendant. The affidavit of E. B. Pomeroy, the duly-appointed, acting, and lawful agent, stated that said Scott was not the agent. The transcript does not show any order made on said motion. Therefore, for aught we know, the defendant may have abandoned his motion, and made a voluntary appearance. Comp. Laws, 414. The defendant filed a demurrer, setting forth ''not waiving, nor intending to waive, its rights to be heard on the motion already noticed, and now pending, to vacate the summons,'' etc. It may have been waived on the overruling the demurrer. An. answer was filed after demurrer was overruled, and no mention there made of special appearance. The party having answered, and having had his day in court, should not be allowed to reverse all the proceedings because of this irregularity of service. Our statute says: ''The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the party, and no judgment shall be reversed or affected by reason of such error or defect.'' Comp. Laws, 2507. ''It is a general rule, now prevailing in the courts, that whereever and whenever substantial justice is secured, a mere technical error, which is harmless in its character, and which has worked no injury, will not be permitted to defeat or annul the final conclusion or consummation of judicial proceedings.'' *Dyas* v. *Keaton,* 3 Mont. 501; *Sweeney* v. *Schultes,* 19 Nev. 53, 6 Pac. 45.

At the time of the institution of this suit (March 12, 1883), a statute had been passed (on the eighth of said month and year) requiring plaintiff, in every action sounding in tort, or for any interest in real estate, not evidenced by writing, at the time of the commencement of the same, to file a bond with the clerk to the effect that if he fails to prosecute to final judgment, or dismisses, that he will pay all damages defendant may suffer, together with reasonable counsel fees and costs. No specified amount was required. This improvident act was the last one of the legislature of 1883, and was repealed among the first of the succeeding legislature. We think it of very doubtful validity, as being special in its nature. The court permitted plaintiff to file a bond which accomplished all the purposes required by the act, and we see no error in it.

The motion for continuance on acount of the absence of witnesses was properly overruled, inasmuch as plaintiff admitted that the witnesses, if present, would testify to the facts stated in the affidavit. See Comp. Laws, c. 48, p. 433, § 160.

In November, 1881, the defendant was engaged in the construction of its railroad between Benson and Contention, in the county of Cochise. The plaintiff was employed by the defendant to drive a team, hauling and distributing ties from the end of the track. The ties were taken to the end of the track by an engine, and there unloaded and distributed by teams, one of which was driven by plaintiff to the places needed to extend the track. Plaintiff was employed by the month to drive this team of defendant, at $35 per month, and board. A large number of men were employed by defendant at the same time in the construction of the road, and all were boarded by defendant on boarding cars, which at that time were upon a side track or switch at Benson. Several miles of the track had been laid. At first, and for a number of days, the teams were driven back to dinner, but as the line was extended, by orders of defendant's supervisors, the plaintiff went back to dinner upon the empty train, upon which went all the workmen engaged in the construction of the road. The plaintiff had thus been going to dinner two or three times. While the men were at dinner the empty cars would be "side tracked," and other cars which had been loaded would be "made up" into a train to carry other material of different kinds to the end of the track, and on this loaded train the men were sent to their work. The dining cars were on a side track. Attached to the locomotive was a flat car, upon which were water-tanks, held on the car by two large wooden cleats nailed to the floor of the car, leaving a space at the end of the car of three or four feet. The loaded train was "backed" or "pushed" from the material yard to the end of the track, and, returning the cars would be at the head of the train.

The plaintiff and some others got on the water car before it became attached to the loaded cars standing on the track. The plaintiff and another man got upon that end which, when backed down, would strike the other cars. He says that after

dinner the whistle blew, which was the signal to return to the train; that the engine was moving when the signal was given, and it came down near the boarding train, and he hurried, and, with other men, got on; "and in a minute, without a moment's notice, the engine started, almost like a shot out of a gun, and ran into this train that was standing on the side track." He says he was sitting with his back against the round water-tank, about four feet from the end of the car, and a little to the right of the center of the tank. A violent collision occurred, the result of which was the moving the tanks and plaintiff, and both his feet and legs were crushed, and they had to be amputated.

There was conflict of testimony as to the position of plaintiff. A witness for defendant testified that his feet and legs were hanging down over the end of the car. The superintendent of the road testified that when the train was made up, and the engine attached, and they were ready to go, and the whistle was blown, then the men were to get on, and anywhere they could find a place. He had issued orders to that effect, and said the water car was not a safe place. The plaintiff testified that he never heard any such orders; that the orders were to get on the cars that were attached to the engine, when the whistle blew.

There was a conflict as to the engineer's condition as to sobriety at the happening of the accident. A witness (a saloon keeper) testified that immediately after "he was pretty full," and he also said: "Henry Moore [engineer] drank, and drank lots, too." The master mechanic, on the other hand, testified that immediately after the accident happened he jumped on the engine, and the engineer was sober.

The question first arises, did the undisputed facts warrant a submission of the case to the jury? In other words, whether the plaintiff, in getting upon the car, as stated by himself, was guilty of an act evidently dangerous, and in so doing was guilty of such negligence as should preclude him from having a verdict as a matter of law. In *Railroad Co.* v. *Stout,* 17 Wall. 657, the supreme court says: "It is true, in many cases, that, where the facts are undisputed, the effect of them is for the judgment of the court, and not for the decision of the

jury. This is true in that class of cases where the existence of such facts come in question, rather than where deduction or inferences are to be made from the facts. * * * In some cases, too, the necessary inference from the proof is so certain that it may be ruled upon as a question of law. If a sane man voluntarily throws himself in contact with a passing engine, there being nothing to counteract the effect of this action, it may be ruled, as a matter of law, that the injury to him resulted from his own fault, and that no action can be sustained by him or his representatives. So, if a coachman intentionally drives within a few inches of a precipice, and an accident happens, negligence may be ruled as a question of law. On the other hand, if he had placed a suitable distance between his coach and the precipice, but by the breaking of a rein or axle, which could not have been anticipated, an injury occurred, it might be ruled, as a question of law, that there was no negligence and no liability. But these are extreme cases. The range between them is almost infinite in variety and extent. Upon the facts proven in such cases it is a matter of judgment and discretion—of sound inference—what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established, from which one sensible, impartial man would infer that proper care had been used, and that there was no negligence. It is this class of cases, and those akin to it, that the law commits to the decision of the jury. Twelve men, of the average of the community, comprising men of education, and men of little education, and men of learning, and men whose learning consists only in what they have themselves seen and heard, —the merchant, the mechanic, the farmer, the laborer,—these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment, thus given, it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.'' 2 Redf. R. R. 231; *Patterson* v. *Wallace,* 1 McQueen, 748; *Mangam* v. *Brooklyn R. Co.,* 38 N. Y. 455; 98 Am. Dec. 66; *De-*

*troit & M. R. Co.* v. *Van Steinburg,* 17 Mich. 99.   See other cases cited therein cited; also *Fernandez* v. *Railway Co.,* 52 Cal. 45; *Houston & G. N. R. Co.* v. *Randall,* 50 Tex. 261.

We hold that this case should have gone to the jury and that the motion for non-suit was properly denied.

Then, it not appearing from the evidence adduced by the plaintiff that this case should have been determined by the court on presentation of plaintiff's case, it was incumbent on defendant to prove a want of care.   In *Railroad Co.* v. *Gladmon,* 15 Wall. 401, it is said: "If there are circumstances which convict him [plaintiff] of concurring negligence, the defendant must prove them, and thus defeat the action." In that case a quotation is made from *Oldfield* v. *New York & H. R. R. Co.,* 14 N. Y. 310, wherein DENIO, J., says: "I am of an opinion that it is not a rule of law of universal application that the plaintiff must prove affirmatively that his conduct on the occasion of the injury was cautious and prudent.   *   *   *   The culpability of the defendant must be proved affirmatively before the case can go to the jury; but the absence of any fault on the part of the plaintiff may be inferred from circumstances, and the disposition of men to take care of themselves, and keep out of difficulty, may properly be taken into consideration."

The jury in this case had fairly presented to them the fact as to whether the boarding of the car by plaintiff was done at the proper time, viz.: when the whistle blew for the men to get on, and whether the plaintiff used proper care and caution in getting on the tank car, and sitting where he did. Were the jury to presume upon the carelessness of the engineer, and was the plaintiff to so presume?   Did not the jury determine that with ordinary caution in the engineer the plaintiff was in a position safe from harm?   They had before them the proof that the water-tanks moved forward by the collision, and the water car was knocked off the track.   They must have been satisfied that the conduct of the engineer was reckless, and that he acted regardless of the consequences. Had the engine-driver moved his engine with due care, plaintiff was safe, whether his legs hung over the end of the car or not, and he cannot be charged with negligence in presum-

ing that the engine-driver would use due care.   They had before them the testimony that Hobson was a stranger to the engineer, and knew nothing about him.   They had before them the contested point of the position of the legs of plaintiff, and the jury had this instruction given them; "If you find that an order was made by defendant in regard to the time and place of getting on the train to return to the end of the track, and the plaintiff violated the order by getting on the car before the train was made up, or before the signal was given to get upon the train, and that such violation contributed proximately to this injury received by plaintiff, he cannot recover;" and the trial judge had before him all the witnesses, could judge of their manner of giving evidence, etc., and he refused a new trial.

The next matter that presents itself for consideration is, did the plaintiff and the engineer occupy such relations towards each other that the act of the one exempted the common employer (the railroad company) from liability?   The plaintiff's business was only to drive the teams from one end of the line for the distribution of ties still further on. Mr. J. C. Fitch was his immediate superintendent or foreman.   Mr. Montandon was Fitch's immediate superior, and engineer of the track-laying department.   The plaintiff had nothing whatever to do with the locomotive engineers, save to be taken to and from his dinner as ordered by Mr. Fitch. His work was not directly connected with this engineer.   Had a fellow-teamster injured the plaintiff, then he could not recover from the employer, on the only just and true basis laid down in all the decisions, and more particularly the *Moranda Case,* 93 Ill. 302, 34 Am. Rep. 168, wherein this cogent language and argument is used: "Where servants of the same master are directly co-operating with each other in a particular business, at the time of the injury, or are, by their usual duties, brought into habitual consociation, it may well be supposed that they have the power of influencing each other to the exercise of constant caution in the master' work (by their example, advice, and encouragement, and by reporting delinquencies to the master) in as great and in most cases in a greater degree than the master.   If, then, each such

cases therein cited; also *Fernandez* v. *Railway Co.*, 52 servant knows that neither he nor his fellow-servant, if injured by the other's negligence, can have redress against the master, he has such incentive to constant care that the well-being of society in such cases does not demand that the master be made to answer. The same considerations of policy which, to avoid injury to third persons, usually demand that the master be held responsible, seem plainly not to demand it in the case of such co-servants. But though servants are men employed by the same master, still, unless either their duties are such as that they usually bring about *personal associations* between such servants, or unless they are actually co-operating at the time of the injury in hand, or in the same line of employment, they have no power to incite each other to caution by counsel, exhortation, or example, or by reporting delinquencies to the master, and the well-being of society in such case must depend upon the devotion of the servant· to the interests of the master, and the zeal of the master to promote a constant exercise of due care by his servants." And, further, says the opinion "Where servants of a common master are not consociated in the discharge of their duties; where their employment does not require co-operation, and does not bring them together, or in such relations that they can exercise an influence upon each other for the promotion of proper caution,—in such case the reason of the rule holding the master responsible for damages resulting from the negligence of one of his servants seems reasonably to apply with as great force as if a stranger were the party injured."

And even, in application to the case at bar, can be invoked the reasoning of Chief Justice SHAW in the celebrated case of *Farwell* v. *Boston & W. R. Corp.*, 4 Metc. 49, 38 Am. Dec. 339, wherein he says: "Where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends to a great extent on the care and skill with which each other shall perform his appropriate duty, each is the observer of the conduct of the other, can give notice of any misconduct, incapacity, or neglect of duty, and leave the service if the common employer will not take such

precautions, and employ such agents, as the safety of the whole party may require. By these means the safety of each will be much more effectually secured than could be done by a resort to the common employer for indemnity in the case of loss by the negligence of each other." *Farwell* v. *Boston & W. R. Corp.*, arose from injuries received by an engineer through the carelessness of another servant of the company, in the management of the switch, and the court, in announcing this doctrine of the exemption of the employer from liability, says that it is a nice question, and adds a "caution against any hasty conclusion as to the application of this rule to a case not fully within the same principle."

The supreme court of the United States in *Randall* v. *Baltimore & O. R. Co.*, 109 U. S. 478, 3 Sup. Ct. Rep. 322, say that hitherto this court had not occasion to decide who were fellow-servants, and that for the purpose of that case it was not necessary to "undertake to lay down a precise and exhaustive definition of the general rule, or to weigh the conflicting views which have prevailed in the courts of the several states." There a switchman was injured by a train where there was "a net-work of tracks." There was no evidence that the tracks were improperly constructed, or that the engine-driver was unfit for his duty. The court there say that the general rule of law is established that one who enters in the service of another takes upon himself the ordinary risks of the negligence of his fellow-servant in the course of his employment. There the plaintiff was in attendance on his switches, and must have known all the dangers attendant thereupon, and could look out for the consequences. In the case at bar no such conditions arise. The engineer was taking plaintiff to his work, which was separate and distinct from that of the engineer. If the work of plaintiff was performed on or about the train, then, by the rules as laid down in the prevailing line of authorities, he would have been a fellow-servant with the engineer. We do not think the case at bar comes within this case; nor the case of *Hough* v. *Railway Co.*, 100 U. S. 213; nor in *Armour* v. *Hahn*, 111 U. S. 313; 4 Sup. Ct. Rep. 433; nor *Abend* v. *Terre Haute R. Co.*, 111 Ill. 202, 53 Am. Rep. 616. It does come within *Seaver* v. *Boston &*

*M. R. R.*, 14 Gray, 466, and *Gilman* v. *Eastern R. Corp.*, 10 Allen, 233, 87 Am. Dec. 635, as the cases are stated in defendant's brief. We have had no access to these cases, but we do not agree with them as defendant states them.

*Russell* v. *Hudson River R. Co.*, 17 N. Y. 134, cited on this point by defendant, we have examined and find that the plaintiff was employed in loading gravel and sand at the pits where they were dug, upon cars, for transportation where filling was required. He and the others thus employed were paid monthly. The company took them to and from New York, (their home,) they paying no fare. On the occasion of the accident the plaintiff helped to unload, and his duties were then ended, and, on proceeding further, he was injured. And say the court: "It is not, I think, entirely clear that the defendants would not have had a right, under their agreement with the plaintiff, to insist upon returning to the city at night. The gravel train could not be properly managed by the engineer alone. It appears that some of the men who worked in the gravel-pit also manned the brakes. A portion of the hands employed lived in the city, and the defendant may have relied upon them to work the brakes in case of necessity, upon return of the train, and may have taken this as a consideration, in agreeing to bring them home at night."

There could not be any reasonable supposition that this plaintiff—a teamster, and nothing more—had, in the slightest degree, anything to do with the movement of this train hauling materials. In the above-cited case some of the workmen were used in and about the train in moving it. It is not analogous to this case, and we think, also, the court rather begged the question in that case. The eminent jurists deciding those cases put them, especially the *Farwell Case,* on the ground of public policy, saying that, "in considering the rights and obligations arising out of particular relations, it is competent for courts of justice to regard considerations of policy and general convenience, and to draw from them such rules as will, in their practical application, best promote the safety and security of all parties concerned." The railways were then but few, and only for short distances. The employes could be known, one to the other, and to the common master,

and the dire consequences of the rule so established could not have been foreseen.

Judge Deady, in *Gilmore* v. *Northern Pac. R. Co.*, 18 Fed. 866, in commenting on those cases, in reference to the responsibility of the master by negligence of fellow-servants, uses this apt language: "In the progress of society, and the general substitution of ideal and invisible masters and employers for the actual and visible ones of former times, in the form of corporations engaged in varied, detached, and widespread operations, it has been seen and felt that the universal application of the rule often resulted in hardship and injustice. Accordingly the tendency of the more modern authorities appears to be in the direction of such modification and limitation of this rule as shall eventually devolve upon the employer, under these circumstances, a due and just share of the responsibility for the lives and limbs of the persons in its employ."

The harsh doctrine that an employe is presumed to take the risks incident to the undertaking, and that he is paid for the same, should never be invoked unless it applies to a case where each other's conduct can be observed; as where, for instance, one miner holds the drill while another strikes, or where in blasting or timbering, each is in a situation to know the want of care of the other. Any other application of such doctrine is, in our opinion, without disrespect to others, contrary to the dictates of common justice and common humanity. It is time that courts were coming back to the doctrine of "*respondent superior.*" It will best insure safety to life and limb by throwing the risk upon those who can best guard against the dangers, and who ought to use the utmost caution in the employment of their agents.

The supreme court of California in *Yeomans* v. *Contra Costa S. N. Co.*, say, (44 Cal. 71:) "Great objections have been made to the rule which relieves a master from liability for damages incurred by the negligence of a fellow-servant. While the rule is too firmly supported by authority to be overthrown, we are unwilling to extend it beyond the limits designated by the general line of decisions. Courts have gone so far as to relieve from responsibility corporations acting through

general agents, within the scope of their authority, classing the foreman, managers, and superintendents, with those under them, as co-laborers; but the supreme court of the United States begins to turn the tide, and Judge Field, in his learned and admirable opinion of *Chicago, M. & St. P. Ry. Co.* v. *Ross,* 112 U. S. 377, 5 Sup. Ct. Rep. 184, quotes approvingly from Redfield (volume 1, p. 554) these words: 'The consequences of mistake or misapprehension upon this point have led many courts into conclusions greatly at variance with the common instinct of reason and humanity, and have tended to interpose an unwarranted shield between the conduct of railway employes and the just responsibility of the company. We trust that the reasonableness and justice of this construction will, at no distant day, induce its universal adoption.''

To accord justice, the greatest difficulty is how to determine who are fellow-servants. If, as before said, they are those who could be watched by their fellows, then it would be unjust to hold the employers responsible. In the *Ross Case* it is said: ''But notwithstanding the number and weight of such decisions there are in this country many adjudications of courts of great learning, restricting the exemption to cases where the fellow-servants are engaged in the same department, and act under the same immediate direction, and holding that, within the reason and principle of the doctrine, only such servants can be considered as are engaged in the same common employment. It is not, however, essential to the decision of the present controversy to lay down a rule which will determine in all cases what is to be deemed such an employment, even if it were possible to do so.''

The *Ross Case* held the railroad company liable for injuries to the engineer caused by the negligence of the conductor of the same train in not showing the engineer an order from the train dispatcher of the coming of a gravel train, with which, by reason thereof, a collision occurred; and the court puts its decision upon the ground that the conductor had control of the train, and direction of the engineer, brakemen, etc., and, ''as to them and the train, he stands in the place of and represents the corporation.'' Four of the members of the supreme court dissent from the opinion of the

majority of the court. Thus, it will be seen that in the minds of just and learned jurists no agreement exists. It is to be hoped that there will be uniformity of decisions on this question, so vital to the general welfare, and that the definition as to who are fellow-servants will be more definitely fixed.

The real issue in this case is, as given in the instructions of the court, as follows: "If the jury believe from the evidence in this case, and from all the circumstances in proof, that the plaintiff was employed by the defendant as a teamster for the purpose of drawing ties, and not employed as a hand on the train, and it was not any part of his duty to be connected with the train, then the court instructs you that the plaintiff would not be considered in law in the same line of employment as the engine-driver. If you believe, however, from the evidence, that the plaintiff was employed by the defendant for the purpose of driving a team, and was also employed, and it was a part of his duty, to be connected with, and he formed a part of the working force of and on the construction train, then the court instructs you that it would be considered in law that he was employed in the same line of employment as the engine-driver; and in that case you would find for the defendant on that point, unless you believe from the evidence that the engine-driver was incompetent, and that such incompetency was known to the defendant prior to his employment, or that such incompetency has been shown by the evidence to have ben known to the defendant by some agent or officer of the defendant, prior to the accident, who had a right to remove him, and, having the power to remove him, failed to remove him."

This was the gist of the case, and we take it that no other error would have worked an injury to defendant. *Chicago, etc. Ry. Co.* v. *Ross,* 112 U. S. 377; 5 Sup. Ct. Rep. 184; *Brobst,* v. *Brock,* 10 Wall. 519.

We do not understand whether or not it was determined by the district judge whether the affidavit of Dr. Handy and Mr. Pomeroy were used on motion for new trial. If so used, we hold they were not sufficient, because it does not appear that the testimony was discovered after the trial. *Arnold* v. *Skaggs,* 35 Cal. 687.

The only question which now remains is, were the damages excessive? The verdict and judgment were for $30,000. On the motion for a new trial the district judge was of opinion that it was excessive to the amount of $15,000. That sum, in open court, was remitted by plaintiff, and accordingly judgment was rendered for $15,000. We do not deem that amount to be too much compensation for the loss of both legs by a healthy man of middle age.

Before closing, one or two other points should be considered. It is urged that the complaint does not state a cause of action, and so no evidence was admissible under it, for the reason that negligence of defendant is not alleged with sufficient particularity. The complaint was filed March 12, 1883. A demurrer was filed April 3, 1883, making two grounds of demurrer: "That the first alleged cause of action does not state facts sufficient to constitute a cause of action; that the second alleged cause of action does not state facts sufficient to constitute a cause of action." This amounts to a general demurrer to the two statements of the cause of action or counts of the complaint. On December 11, 1883, an amended complaint was filed, the same as the first, except is added the allegation of due care on the part of plaintiff.

No demurrer seems to have been filed to the amended complaint; hence any insufficiency which might have then been cured by amendment may not now be urged as ground for reversal. The complaint, however, alleges (section 4) that the engine was out of order, and that, by reason thereof, and negligence and careless handling of the same by defendant and its servants, the car on which plaintiff was, was driven with great violence against a box car standing on defendant's track, by which plaintiff was injured. Section 3 states that plaintiff got on a train of cars of defendant to be carried, etc. For separate cause of action the complaint alleges that plaintiff was rightfully on a train of cars of defendant, and that, while on said train of cars, a collision occurred, caused by the negligence of defendant and its servants, whereby plaintiff was injured, etc. Were it admitted—which is not necessary for us to decide here—that this complaint would be obnoxious to a special demurrer on the ground that the alleged negli-

gence is not stated with sufficient particularity, we are of opinion that it is sufficient, as against a general demurrer. Evidence must not be pleaded; only the general or ultimate facts need be alleged. It would be proper to prove that a collision occurred by reason of a defective brake; that the brake was defective by reason of an unsound piece of wood; that the unsound piece of wood was used by a drunken workman; and that defendant did or by due diligence could have known him to be drunken, and retained him in that service. All these facts tend to prove that a collision occurred by reason of negligence, which is the alleged fact to be demonstrated. But it would be bad pleading, and obnoxious to a special demurrer on that ground. Bliss, Code Pl. § 211; Thomp. Neg. 1246 *et seq.;* and see *Wabash Ry. Co.* v. *McDaniels,* 107 U. S. 454; 2 Sup. Ct. Rep. 932; *Oldfield* v. *New York etc R. R. Co.,* 14 N. Y. 310; Boone, Code Pl. § 174, and cases cited.

It is also objected that the court permitted evidence to go to the jury tending to show that the engineer was drunk, or under the influence fo liquor, at the time, because that fact was not alleged. This evidence was part of the *res gestae.* It was one of the proximate facts existing at the time tending to prove that the engine was negligently driven against other cars. The engineer being drunk did not injure plaintiff; it was the collision, caused, perhaps, by intoxication. The court permitted evidence tending to show that the engineer was habitually intoxicated, and a reckless "runner." This was competent, as tending to show that at the time alleged he handled his engine negligently. It tended to prove the alleged fact of a collision caused by negligence. The court permitted evidence that this engineer was reputed to be a reckless runner, and in the habit of becoming intoxicated. While this was error, it is not such an eror as should reverse in this case. It could only affect the question whether the engine was handled negligently. Were that a doubtful question in this case, then this evidence should influence us to reverse the judgment. But the evidence is clear and overwhelming that the engine was driven under circumstances of great danger, with reckless violence against cars standing on the track. That being true, this evidence could not affect the verdict in this case.

The amended judgment rendered seventeenth November, permitting the judgment of twelfth of December, 1883, to stand, upon the plaintiff remitting $15,000, and the order denying the motion for a new trial, are affirmed.

Barnes, J., concurs.

SHIELDS, C. J., (*dissenting.*)   I am unable to concur in the able opinion of my brother, Judge Porter, in this case, and will briefly state my reasons why.   I think the opinion fails to consider at all important questions raised by the record, and discussed before us, upon argument, while the conclusion reached on some of the questions discussed I think are wrong. Several important questions were discussed on argument, and, among other objections, appellant insisted, in the first place, that, even though the plaintiff had otherwise shown himself entitled to recover, his own negligence so contributed to the injury as to preclude a recovery.   In the second place, that the plaintiff was a fellow-servant with Moore, the engineer, through whose alleged negligence the injury occurred, and was therefore not entitled to recover.   No negligence of the defendant being shown, all proof of the general reputation of Moore for unfitness, by reason of his general habits of intoxication, being improperly in the case, is without force to charge the defendant with negligence.   And, third, that the court erred in its rulings and instructions.   There were other questions discussed, but the main contention was over these propositions, as I have stated them.   Upon these questions I now desire to state my views.

1.   The proposition that, in an action of this kind, the plaintiff cannot recover, provided his own negligence contributed to the injury received, is too well founded in reason, and justified by authority, to admit of question,—hardly of discussion.   Such must be regarded as settled law.   The cases which announce such doctrine are too numerous to recite, but reference to a few are given here:   *Lake Shore, etc., R. R. Co.* v *Miller,* 25 Mich. 274; *Marquette, etc., R. R. Co.* v. *Handford,* 39 Mich. 539; *Daniels* v. *Clegg,* 28 Mich. 32; *Minnick* v. *City of Troy,* 83 N. Y. 514.

In the 25 Mich. case the following language is used:   "The

law is too well settled by the overwhelming weight of authority, both in England and the United States, to be now disputed, that, in an action like this—recovery for an injury arising from negligence of the defendants in carrying on their lawful business, without wanton or intentional wrong—the plaintiff cannot recover if his own negligence directly or approximately contributed to produce the injury, though the defendants may also have concurred in producing the result. This rule, it is true, often, perhaps generally, fails to produce justice, and, upon abstract principles of right and wrong, may be said to be frequently unjust in its operation. Justice might seem to require that each should bear the loss in the proportion they have respectively contributed to the injury. But precisely here lies the difficulty which is inherent in the nature of the subject, and the infirmity necessarily incident to all human administration of justice,—the impossibility of ascertaining which portion of the injury was produced by the negligence of the one, and what by the other, and in apportioning to each his just share of liability. * * * The absence of contributory negligence on the part of the plaintiff is therefore just as essential an element in the cause of action as the negligence of the defendants, and just as clearly constitutes a necessary part of the plaintiff's case; and until he has shown it, or until, in some way, it appears from the evidence, he does not make a *prima facie* case.'' See, also *Wilson* v. *Charlestown*, 8 *Allen*, 138, 85 Am. Dec. 693; *Galena C. U. R. Co.* v. *Fay*, 16 Ill. 585, 63 Am. Dec. 323; *Warner* v. *New York C. R. Co.*, 44 N. Y. 465.

There are certain exceptions to this rule, of course, and what they are is very fully and ably shown in the discussion of the case in 25 Mich., but a consideration of those exceptions in this case is not important. The rule being so well settled, any further discussion, I think, is unprofitable. But whether the plaintiff has been guilty of contributory negligence is usually a question of fact for the jury, and not one of law for the court. Of course, there may be cases where the negligence is so apparent, and the question so free from doubt, that it becomes the duty of the court to say that the plaintiff has been himself so negligent as to preclude a recovery. To warrant the court, however, in deciding that in any given case the

plaintiff was guilty of negligence, such case must be very clear, and one that reasonably and fairly would warrant no other inference than that of negligence. When, therefore, the question of negligence depends upon a disputed state of facts, or when the facts, though not disputed, are such that different minds might honestly draw different conclusions from them, the court cannot give positive instructions upon that subject, but must leave the jury to draw their own conclusions upon the fact, and upon the question of negligence dependent upon them. *Grand Rapids & I. R. Co.* v. *Judson,* 34 Mich. 506; *Sutton* v. *Wauwatosa,* 29 Wis. 21, 9 Am. Rep. 534.

On the trial of this case it appears the plaintiff contended that there was no evidence of contributory negligence on his part, while the defendant, with equal earnestness, insisted that the evidence of such fact was so clear that it was the duty of the court to have directed a verdict in its favor, and that, even if this were not so, there was still error in the instructions given on the subject, and in its submission to the jury. To determine which of these opposing positions is correct, we must examine into the testimony given on the trial, and the charge of the court. The case in behalf of the plaintiff mainly rested on his own testimony; at least, so far as the circumstances of the accident itself, this is true. From his testimony it appears that he was in the employ of the defendant, engaged as a workman in the construction of its road, or, rather, a branch thereof; that on the day he was injured he in common with two or three hundred other employes, were taken on board a train of box cars from the point where they were working back over the road, to Benson, a distance of four or five miles, for dinner; that, after obtaining the dinner, he jumped upon an engine and water car, upon which were two large water tanks, believing that was the train that was to take him back to his work, but, instead thereof, the train was carelessly, and at a high rate of speed, backing down the line of the road against some stationary cars standing thereon; and that, in the collision which took place, both his legs were broken in such a manner that amputation thereof became necessary; that he was called by the whistle of the locomotive to go upon such train, and did so,

believing it was the train to convey him back to his work; and claims, further, that, by reason of such whistle of the locomotive, he was properly upon the car in question; and that the accident took place by and through the carelessness of Moore, the engineer in charge of such locomotive.

There is testimony on behalf of defendant tending to show that this was a locomotive and car upon which the plaintiff had no business to be; that it was simply switching in the yard opposite the eating-house where plaintiff obtains his dinner, and that plaintiff sat in the rear of the car as it backed up against the stationary cars, with his feet hanging over; and that he was careless, not only in going upon the car in question, but also in the manner in which he sat upon the car. In this regard it is proper to state that the plaintiff's own testimony shows that the empty cars upon which he came to his dinner were on another track from the one he was on, and that he was aware of the fact when he went upon the water car upon which he was injured. From the evidence, I have no doubt the question of contributory negligence was one of fact for the jury. It is true, there are some things shown in the proofs of appellant which, if taken as true, no court should hesitate to declare the plaintiff guilty of such negligence as to prevent a recovery,—such, for instance, as that tending to show that the plaintiff went upon the car where he was hurt knowing the same was not the car for him to ride upon, and while such car was backing up and switching, before the time had come for him to go upon another car at all; and that he negligently rode, with his legs hanging down over the rear of the car, while it was being propelled backwards against the stationary cars. If such were the facts, of course, no court should hesitate in declaring the plaintiff guilty of such gross negligence as would anywhere prevent a recovery on his part. But this proof was denied by the plaintiff, and thereupon it became a question for the jury, who, and not the court, are to ascertain the truth from the conflicting testimony. *Conley* v. *McDonald,* 40 Mich. 150; *Railway Co.* v. *Slattery,* 39 Law T. (N. S.) 265; *Improvement Co.* v. *Munson,* 14 Wall. 448; *Pleasants* v. *Fant,* 22 Wall. 122; *Hickman* v. *Jones,* 9 Wall. 201.

This was a question of fact, depending upon the credibility of witnesses, or inferences from facts about which honest-minded men might fairly differ, and therefore it became a question of fact for the jury. But, while this was so, the appellant had a clear legal right to insist that the question should be fairly sumbitted to the jury under proper instructions. I do not think that was done. Appellant, on this branch of the case, asked the court to give the following request: "If you find that the plaintiff, in the exercise of ordinary care, might have avoided the injury, either by getting upon a different car, or occupying a different place upon the same car, and such want of ordinary care contributed approximately to the injury, he cannot recover." This was refused, and, I think, wrongly so. The request was proper in form, and pertinent and correct in law, and there was no similar instruction given in the general charge. The court in the instruction did use the following language: "If there be negligence on the part of the defendant, then whether it should be exempt from liability by reason of contributory negligence of the plaintiff is a question for your determination, under the evidence, as applied to the law of contributory negligence." That is the only reference to the question of contributory negligence throughout the entire charge. Evidently the judge, in giving this instruction, intended to refer again to the subject, but omitted to do so. This, it is easy to see, did not present the question as fully and fairly as it was appellant's right to have done. The jury should have been told, in substance, that if the plaintiff, by going upon that particular car, at the time and under the circumstances that he did, or by reason of the position taken by him thereon, or by any other act of his disclosed by the evidence and belief by the jury, was guilty of negligence contributing to the injury suffered, or if he omitted to exercise such due care as a reasonable, prudent, and careful person would have taken to avoid the accident, then he could not recover. The rules of law applicable to the subject should have been plainly stated. Nothing of the kind, however, appears in the instruction, and the jury are left entirely in the dark as to what it meant by "the law of contributory negligence," or

even as to what that expression, so used by the court meant. The request of the appellant should, therefore, have been given; and, under the circumstances, there being an entire absence of anything similar in the charge of the court, it was error to have refused it. The opinion of my Brother Porter omits entirely any reference to this feature of the question of contributory negligence, which was one of the vital questions in this case, and one that, it seems to me, should demand serious consideration at our hands. It is, indeed, stated in that opinion that the facts disclosed by the record are such that the court could not properly have decided the question of contributory negligence, and so far I agree with the opinion of Judge Porter. What I say is that the question was not fairly submitted to the jury, which is a wholly different question from the one whether or not the trial judge should have passed upon the question of contributory negligence.

2.   I next consider the question arising out of the relations which the plaintiff bore to Moore, the engineer, through whose negligence he claims he was hurt, and the proof as to Moore's unfitness for the position he occupied. The plaintiff on the trial sought a recovery upon the two distinct theories: *First,* that the defendant was liable to the plaintiff for the negligence of Moore the same as it would be to a passenger or other person not in its employ, Moore not being a fellow-servant with the plaintiff; and, *second,* even if this were not so, and plaintiff and Moore were fellow-servants, still defendant was liable to the plaintiff on the ground that it was negligent in retaining Moore in its employment after he had become unfit by reason of habits of intoxication to discharge the duties of his place, and that these habits were so notorious the defendant should have known them.

In view of these theories upon the trial it is necessary to notice the case as made by the declaration. That is composed of two counts or causes of action. In the first the negligence is charged as follows: ''That the engine or locomotive used by defendant in drawing its train was imperfect, and out of order, and in unsafe condition; that, by reason of such unsafe condition of said engine, and the negligent and careless handling of the same by the defendant and its servants, the car

upon which plaintiff was, was driven with great violence against the box car standing upon its said railroad track, by which plaintiff was thrown with great violence against said box car, and both his feet were caught between said box car and upon which said plaintiff was.'' The second count alleges the negligence as follows: ''That while he [plaintiff] was upon said train of cars, as aforesaid, at the said town of Benson, in the county of Cochise, in said territory, a collision occurred on said railroad, caused by the negligence of said defendant and its servants, whereby the plaintiff was much injured, and had both his legs so bruised, crashed, and mangled that it was necessary, in order to save plaintiff's life, to amputate both of the said legs.''

This is the declaration entire, so far as it undertakes to charge negligence. On the trial the plaintiff recovered upon the theories just stated, both of which were, by the court, submitted to the jury, who rendered a general verdict for the plaintiff. It is therefore uncertain which theory recovery was had upon. The court permitted the proof of the general habits of intoxication of Moore against the objection of appellant that the same was incompetent and inadmissible under the complaint. I feel entirely certain that this objection should have been sustained.

The complaint disclosed no such cause of action as proven in this regard, and did not apprise appellant that the same would be proved against it as a ground of recovery. This appellant was entitled to know. It is a rule of pleading that ''every system of judicial altercation has for its object the accomplishment of two ends,—the first to apprise the parties, and the second apprise the court, of its precise subject of controversy; and these ends imply the necessity for precision in the use of words, in order to avoid equivocation,—to guard against the mischief and injustice of misleading statements. In construing the language of the declaration the course is to make reasonable intendments, and read and apply the terms in the natural and usual sense, and without supposing this or that qualification, which, though possible, is not fairly indicated.'' *Batterson* v. *Chicago, etc., Ry. Co.*, 49 Mich. 187, 13 N. W. 508.

In *Flint & P. M. Ry. Co.* v. *Stark*, 38 Mich. 717, it is said: "Negligence consists in the failure to observe that degree of care which the law requires for the protection of the interests liable to be injuriously affected by the want of it. In making out negligence, the first requisite is to show the existence of the duty which has been neglected. That duty is necessarily set out in the declaration, and the neglect averred, and the failure to prove it is a failure to make out the plaintiff's case." See, also, *Bluffton* v. *Mathews*, 92 Ind. 213; *Gilman* v. *Eastern R. Corp.*, 10 Allen, 233, 87 Am. Dec. 635.

In the case before us the direct cause of the injury was, of course, the alleged negligence of Moore in running the locomotive at too high a rate of speed, and the claimed negligence of the company upon which alone the proofs undertake to hold it responsible, aside from the theory that Moore and plaintiff were fellow-servants, was the omission on its part to make frequent or any examination into the qualifications or habits of Moore after having employed him, there being no claim that there was not due care in hiring him in the first instance. Now, under any system of pleading, code or otherwise, the facts upon which negligence is claimed must be stated. *Marquette H. & O. R. Co.* v. *Marcott*, 41 Mich. 433; 2 N. W. 795. In that case it is stated that "reason and good sense, as well as law, compel the plaintiff, by his declaration in these cases, to inform the defendant and the tribunal what the complaint is; and he must not only show that the defendant has been negligent, but must further show in what respect. The maters of negligence to which the injurious consequences referred must be properly stated." See, also, *Wright* v. *New York Cent. R. Co.*, 25 N. Y. 566; Boone, Code Pl. § 174; *City of Buffalo* v. *Holloway*, 7 N. Y. 493, 57 Am. Dec. 550; *Taylor* v. *Atlantic Nut Co.*, 2 Bosw. 106; *Gautret* v. *Egerton*, L. R. 2 C. P. 371.

There is no hardship to plaintiff in this or any other form of action in compelling him to adhere to the rule here stated, and which is supported by the clear weight of authority. He should know, when he commences his suit, the ground upon which he is to proceed. A contrary rule, however, or one which would sustain as correct the general allegations of

negligence, would be of incalculable hardship to a defendant, who might never know the negligence or omission to be relied upon till announced for the first time upon the trial. I do not mean by what I have said to intimate, even, that such proofs of general reputation for unfitness as were offered and received in this case, but against objection, may not be sufficient to authorize the recovery in a case where it is properly pleaded. I have no doubt that if an employer negligently employs an unfit person, generally known and reputed as such, or negligently continues such a person in his employment after such reputation has become known, the responsibility must rest upon such an employer, even though, in point of fact, he may have been ignorant of such unfitness, provided reasonable and proper care or examination and supervision would have made known such unfitness. The ignorance itself would be regarded as negligence in a case in which any proper inquiry would have obtained the necessary information, and where the duty to inquire was plainly imperative. But in such case the plaintiff must allege the unfitness of the person employed,—the knowledge thereof by the defendant, or the existence of such facts as would amount to actual knowledge on the part of the defendant, and that would estop the defendant from a denial thereof. In such case, upon the trial, the burden is upon the plaintiff to prove that the defendant had such knowledge of such claimed unfitness, either actual or through such facts and circumstances as would estop the plaintiff from denying knowledge of the unfitness of such servant through whose negligence such injury happened. *Quincy Min. Co.* v. *Kitts,* 42 Mich. 34; N. W. 240.

The difficulty in this case is that one of the main theories and causes upon which the plaintiff recovered upon the trial, namely, the negligence of the defendant in retaining Moore in its employ after his unfitness by reason of his habits of intoxication, which were so notorious that the defendant should have known them, and would, had it exercised reasonable care in the management and supervision of its work and its employes, was not alleged in the complaint, and the proof of such cause of action was improperly received, against the

objection of the defendant. My brethren, while agreeing that this proof was improperly received, think it could not injure the defendant, and in this I cannot agree with them. It cannot be known from the charge of the court, and the verdict rendered, but that the recovery was had upon this proof; and, certainly, if that be so, it cannot be said the proof could do no injury. But even if it be true that the recovery was had upon the theory that the defendant was liable for the direct negligence of Moore, then the admission of this testimony, admitted to be incompetent, would be error. Its natural and inevitable effect was to prejudice the jury in passing upon any question of fact submitted to them,—to induce them to act from passion rather than from judgment.

3. This brings me to a consideration of the question whether Moore and the plaintiff were fellow-servants or not. Upon this subject I think that Moore and the plaintiff were unquestionably fellow-servants, and that being so, the law is well settled that the master is not liable to those in his employ for injuries directly and naturally charged to the negligence of fellow-servants, nor, under the authorities, does it make any difference that such fellow-servants are in different departments of employment, provided they are engaged in the same general business. *Davis* v. *Detroit* & *M. R. Co.,* 20 Mich. 105, 4 Am. Rep. 364; *Farwell* v. *Boston* & *W. R. Corp.,* 4 Metc. 49, 38 Am. Dec. 339; *Gilman* v. *Eastern R. Corp.,* 10 Allen, 233, 87 Am. Dec. 635; *Bold* v. *New York Cent. R. Co.,* 18 N. Y. 432; *Weger* v. *Pennsylvania R. Co.,* 55 Pa. St. 460; *Pittsburg, etc., Ry. Co.* v. *Devinney,* 17 Ohio St. 209; *Moseley* v. *Chamberlain,* 18 Wis. 700; *Randall* v. *Baltimore* & *O. R. Co.,* 109 U. S. 478, 3 Sup. Ct. Rep. 322.

In this latter case it is held that a brakeman, working a switch for his train on one track in a railroad yard, is a fellow-servant with an engine-man on another train of the same corporation, upon an adjacent track, and cannot maintain an action against the corporation for an injury caused by the negligence of the engine-man in driving his engine too fast, and in not giving due notice of its approach, without proving negligence of the corporation in employing an unfit engine-man. The pleader in that case followed the rule

which I have already stated, and which I think should prevail in all similar cases. The declaration there alleged that the servant through whose alleged negligence the injury took place was unskillful, negligent, and unfit to perform the business and employment he was engaged in by the plaintiff to perform, and that his unskillfullness and negligence and unfitness were known to the defendant. The doctrine as to liability for negligence of a fellow-servant in that case is stated as follows: "The general rule of law is now firmly established that one who enters the service of another takes upon himself the ordinary risks of his fellow-servants, in the course of the employment;" and while declining in that case to lay down the precise or the general definition as to who are fellow-servants, the court says: "Persons standing in such a relation to one another as did this plaintiff and the engine-man of the other train are fellow-servants, according to the very great preponderance of judicial authority in this country, as well as to the uniform course of decisions in the house of lords, and in the English and Irish courts, as is clearly shown by the cases cited. They are employed and paid by the same master. The duties of the two bring them to work at the same place, and at the same time; so that the negligence of the one in doing his work may injure the other in doing his work. Their separated services have an immediate common object,—the moving of trains. Neither works under the control or orders of the other. Each, by entering into his contract of service, takes the risk of the negligence of the other in performing his service; and neither can maintain an action for an injury caused by such negligence against the corporation,—their common master."

Under the rule here laid down, Moore and the plaintiff were unquestionably fellow-servants. They were employed and paid by the same master, and neither worked under the control or orders of the other; but both were under the control and orders of Fitch, the foreman of the work. Moore had no authority whatever over the plaintiff. Fitch directed when the train should start, where it should go, and directed the plaintiff and the other workmen when and where they should go upon the train to be conveyed to their dinner. Both Moore

and the plaintiff were therefore directly and absolutely under the control and orders of Fitch. They were therefore clearly, in my judgment, fellow-servants. It would serve no useful purpose to undertake to collect and review the many and conflicting authorities upon this subject, of who are, and who are not, fellow-servants. The true rule, sanctioned and sustained by the highest authority, as I understand it, is that the fellow-servant for whose negligence the company is not liable is one who labors in the same common employment, and who has not authority over the one injured, and who, no more than the injured party, is charged with the discretionary exercise of powers and duties resting upon and belonging to the company. The person causing the injury by his negligence must occupy some superior or commanding position to that of the person injured. *Chicago & N. W. Ry. Co.* v. *Bayfield,* 37 Mich. 205; *Moon* v. *Railroad Co.,* 8 Va. Law J. 540; *Nashville & D. R. Co.* v. *Jones,* 9 Heisk, 27; *Farwell* v. *Boston & W. R. Corp.,* 4 Metc. 49, 38 Am. Dec. 339; *Randoll* v. *Baltimore & O. R. Co.,* 109 U. S. 478, 3 Sup. Ct. Rep. 322

In *Bartonshill Coal Co.* v. *Reid,* 3 McQueen, 266, and *Bartomhill Coal Co.* v. *McGuire,* 3 McQueen, 300, the parties injured were miners, employed to work in a coal-pit, and the party whose negligence caused the injury was employed to attend the engine by which they were let down into the mine. The same engine, however, raised the coal from the bottom of the mine to the surface. In that case it was held that the engineer and the workmen were engaged in a common work, the court saying: ''The miners could not perform their part unless they were lowered to their work, nor could the end of their common labor be attained unless the coal which they got was raised to the pit's mouth, and, of course, at the close of the day's labor, the workmen must be lifted out of the mine. Every person who engaged in such an employment must have been perfectly aware that all this was incident to it, and that the service was necessarily accompanied with the danger that the person entrusted with the machinery might be occasionally negligent, and fail in his duty.''

I do not think that the case of *Chicago, etc., Ry. Co.* v. *Ross,* 112 U. S. 377, 5 Sup. Ct. Rep. 184, decided by the

supreme court of the United States, and relied upon by the
plaintiff, establishes any other or different doctrine from that
that I have stated. That case, like all the others, on examina-
tion, would be found to put the right of recovery upon the
ground that the person through whose negligence the injury
happened, was in a place of authority over the person injured,
and occupied such a position as, for the time being, to stand
in the place of and represent the company. Of course, in
such a case as that, there can be no question about the
liability of the company for the injuries so caused; but it is
not true to say that Moore stood in any such position or atti-
tude in the present case. In the *Ross Case,* just cited, Mr.
Justice Field, in pronouncing the very able opinion in that
case, says: ''There is, in our judgment, a clear distinction to
be made, in their relation to a common principle, between
servants of a corporation exercising no supervision over others
engaged with them in the same employment, and agents of
the corporation, clothed with the control and management
of a distinct department, in which their duty is entirely that
of direction and·superintendence. A conductor, having the
entire control and management of a railway train, occupies
a very different position from the brakeman, the porters, and
other subordinate employes. He is, in fact, and should be
treated, as the personal representative of the corporation, for
whose negligence it is responsible to subordinate servants.
\* \* \* We know from the manner in which railways are
operated that, subject to the general rules and orders of the
directors of the companies, the conductor has entire control
and management of the train to which he is assigned. He
directs when it shall start, at what speed it shall run, at what
stations it shall stop, and for what length of time, and every-
thing essential to its successful movements; and all persons
employed on it are subject to his order. In no proper sense
of the term is he a fellow-servant with the firemen, the brake-
men, the porters, and the engineer. The latter are fellow-
servants in the running of the train under his direction, who,
as to them and the train, stands in the place of and repre-
sents the corporation.'' Now, I concur in all that, and
give it my full sanction, but I cannot see how the case can

aid the plaintiff at all here. The reasoning there used and employed, as I look at it, is directly opposed to the position of plaintiff in this case. Upon the trial there was no pretense, and could be none, that the engineer, Moore, stood in the place of, or in any manner represented, the company. As I have already stated, he was simply, like the plaintiff, acting under the orders and control of the foreman of the work, who directed when and how the train should be moved. I think I have now said enough to indicate my views upon the features of the case stated, to show why I cannot concur in the opinion filed. Of course, the rule that I have stated here does not exempt the defendant from liability from negligence in employing an unfit servant, or negligently retaining such servant in its employment. Such a case, if properly alleged and proved, may justify a recovery, but under the declaration in the present case no such recovery could be had. As I have shown, the defendant was entitled to have such a case properly alleged. It is true, an amendment may remedy this hereafter; but that does not help the plaintiff now, as the case stands. The objection made to such proof affected the substantial rights of the defendant on this trial, and it is entitled to the benefits thereof. For the reasons stated I think the verdict and judgment should be reversed.