[Civil No. 342.    Filed May 3, 1893.]

[33 Pac. 821.]

WILLIAM McGILL, Plaintiff and Appellee, v. SOUTHERN PACIFIC COMPANY, Defendant and Appellant.

1. FELLOW-SERVANTS—SECTION-MAN—CONDUCTOR—HOBSON v. RAILROAD Co., 2 ARIZ. 171, CITED.—A section foreman is not a fellow-servant of the conductor of a railway train upon which he is being carried

from the point where he has been at work. *Hobson* v. *Railroad Co.*, *supra*, cited.

2. VERDICT—DAMAGES—EXCESSIVE—REMITTITUR—CONDITION TO DENYING NEW TRIAL.—Verdict held excessive, and district court ordered to modify judgment, provided plaintiff shall elect to remit ten thousand dollars from his former judgment; otherwise, a new trial ordered.

Reversed on rehearing. 5 Arizona, 44 Pac. 302.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. Richard E. Sloan, Judge. Affirmed.

The facts are stated in the opinion.

J. A. Zabriskie, and Maxwell & Satterwhite, for Appellant.

The law applicable to the case at bar is: "That if the plaintiff, at the time of the accident, was in the employ of the defendant, operating said railroad, and was not subject to the orders of the conductor of the work-train, and the accident occurred by the carelessness and negligence of a co-employee, who was engaged in the same general employment, then the plaintiff cannot recover in this action."

Redfield on Railways (6th ed., vol. 1, pp. 554, 555) states the rule as follows: "It seems to be now perfectly well settled in England, and mostly in this country, that a servant who is injured by the negligence or misconduct of his fellow-servant, can maintain no action against the master for such injury." Citing the following cases: 3 Mees. & W. 1; 5 Exch. 354; 1 McMull. 385, 36 Am. Dec. 268; 6 Barb. 231; 5 Exch. 343, 4 Met. 49, 38 Am. Dec. 339, and note; 6 Hill, 592, 41 Am. Dec. 771; 3 Cush. 270; 15 Barb. 574; 15 Ill. 552; 9 Cush. 112; 6 Am. Law Reg. 352; 38 Wis. 289; 51 Tex. 270; 49 Cal. 128; 51 Cal. 255; 30 Wis. 674; 11 Am. Law Reg. 641; 14 Fed. 8C3; 25 Am. Law Reg. 484; 79 Cal. 97, 21 Pac. 437; 67 Ill. 498; 14 Fed. 277; 85 Ill. 500; 44 Wis. 638; 20 Barb. 449; 23 Pa. St. 384; 6 Ind. 205; 11 Fed. 564; 32 Mich. 510; 81 N. C. 446, 31 Am. Rep. 512; 44 Cal. 70; 53 Cal. 35; 18 Wis. 731; 100 U. S. 214; 4 West Coast R. 563; 88 Cal. 360, 26 Pac. 175; 11 Kan. 83; 3 Dill. 319, Fed. Cas. No. 3916; 49 Miss. 258; 59 Ala. 245.

This general rule involves no federal question, and is not open to denial in federal courts any more than elsewhere.

Patterson on Railway Accident Law says (p. 342): "Railway servants take upon themselves the ordinary risks of the service, including the negligence of fellow-servants." On page 356 he says: "The common object of railway service being that of fitting the line for traffic, and of carrying on the traffic, all who are employed in the accomplishment of the object, and whose negligence may be the cause of injury to one another, are deemed to be fellow-servants."

Patterson further says (p. 355): "The general rule, therefore, is, that servants take the risk of their fellow-servant's negligence, and the master, if he has not been negligent in the selection or retention of the negligent fellow-servant, is not impliedly liable to indemnify them for any injury resulting from the negligence of that fellow-servant." Citing: 11 Exch. 832; 3 H. & C. 589; 16 C. B. N. S. 669; 23 Pa. St. 110; 10 Allen, 233, 87 Am. Dec. 635; 5 N. Y. 492; 25 N. Y. 562; 111 U. S. 313, 4 Sup. Ct. Rep. 433; 32 Vt. 473; 15 Am. & Eng. R. R. Cases, 243; 76 Me. 143; 76 Ill. 395; 26 Iowa, 363; 7 Ohio St. 197; 2 H. & C. 102; 6 C. B. N. S. 429; 17 N. Y. 134; 38 Pa. St. 104, 80 Am. Dec. 467; 10 Cush. 228; 18 N. Y. 432; 93 Pa. St. 479; 63 Pa. St. 453; 109 U. S. 478, 3 Sup. Ct. Rep. 322; 46 Tex. 540; 42 Mich. 523, 4 N. W. 203; 43 Me. 269.

In *Abend* v. *Terre Haute etc. Ry.*, 111 Ill. 202, 53 Am. Rep. 616, the court say: "The foreman of wreckers while being carried on a wrecking train to the scene of a wreck voluntarily seated himself in the engine cab, and was killed in a collision between that train and another. The evidence showed that the wrecking force is always made up in a hurry out of the employees and servants of the company, without regard to the particular line of service in which they are employed. The removing of obstruction from the track is a distinct branch of the service, to which all the laboring force of the company are liable to be called without any reference to their ordinary duties, and when the force thus made up goes aboard the wrecking train and starts to the scene of the disaster, they are all, including conductor, engineer, foreman, and brakeman, put as much in a common branch of the service, while on the way, as they are after their arrival, and the work of

clearing the track has commenced. It was an error to suppose that a force of men cannot be engaged in a common cause, unless all are continuously working at the same time, and engaged in doing precisely the same kind of work. It is sufficient if they are all employed by the same master, and the work of each, whatever it may be, has for its immediate object a common end or purpose, sought to be accomplished by the united effort of all.'' The doctrine of this case completely covers our case, so far as fixing the plaintiff and the conductor, Barrett, in the same common employment as co-employees is concerned.

For a comprehensive list of cases showing the different classes of servants who are held to be fellow-servants, see Patterson on Railway Accidents, pp. 365, 366, 367.

The only case that stands squarely against this great weight of authority is the case of the *Chicago etc. R. R. Co.* v. *Ross,* 112 U. S. 377, 5 Sup. Ct. Rep. 184. The facts in this case were these. The plaintiff, Ross, was the engineer of a freight train at the time of a collision with a gravel train on the same road, and was seriously injured in the collision. At the time of the collision the train was running under a printed regulation of the company, which provided that ''The conductor will have charge and control of the train, and of all persons employed on it, and is responsible for its movements while on the road,'' etc. In that case, under that regulation of the company, the conductor stood in the relation of superior or vice-principal towards the engineer who was running the engine, and the engineer must necessarily obey his orders when running the train.

Here lies the distinction between that case and the case at bar. In this case the plaintiff was in no sense whatever under the orders or direction of the conductor, Barrett; and this is the pivotal point of difference between the two cases. In that case Justice Field says: ''There is, in our judgment, a clear distinction to be made in their relation to their common principal between servants of a corporation, exercising no supervision over others engaged in the same employment, and agents of the corporation, clothed with the control and management of a distinct department, in which their duty is entirely that of direction and superintendence.'' Even in that case Justice Field recognizes one universally conceded

rule when he says: "The general liability of a railroad company for injuries, caused by the negligence of its servants to passengers and others is conceded. But where the injuries befall a servant in its employ, a different rule applies. Having been engaged for the performance of special services, he takes upon himself the ordinary risks incident thereto. As a consequence, if he suffers by exposure to them, he cannot recover compensation from his employer. The obvious reason for this exemption is, that he has, or in law is supposed to have them in contemplation, when he engages in the service, and that his compensation is arranged accordingly. He cannot in reason complain if he suffers from the risk which he voluntarily assumes, and for the assumption of which he is paid. There is another reason assigned for this exemption: that of supposed public policy. It is assumed that the exemption operates as a stimulant to diligence and caution, on the part of the servant, as well for his own safety as that of his master. Much potency is ascribed to this assumed fact, by reference to those cases where diligence and caution on the part of servants constitute the chief protection against accidents. When the service to be performed requires for its performance the employment of several persons, as in the movement of railway trains, there is, necessarily, incident to the service of each, that the others may fail in the vigilance and caution essential to his safety. And it has been held in numerous cases, both in this country and England, that there is implied in his contract of service in such cases, that he takes upon himself the risks arising from the negligence of his fellow-servants, while in the same employment, provided the master is not negligent in their selection or retention, and that if injuries then befall him from such negligence, the master is not liable."

We therefore submit that the refusal of the court to give the charge requested by defendant on the question of fellow-servants, and what kind of service constitutes fellow-servants, was error.

Francis J. Heney, and G. C. Israel, for Appellee.

The instruction regarding fellow-servants directly followed the Ross case, leaving it to the jury to find from the evidence whether Barrett was the conductor of the train upon

which the defendant was, and whether he had charge of said train.

WELLS, J.—This action was brought by plaintiff, who was in the employment of defendant as a section foreman on its railway, for injuries sustained by him in a collision between two railway trains, caused by the alleged negligence of the conductor of the train in which he was at the time of the injury. At the trial below several questions were asked, to the ruling of the court on which the defendant took exceptions and assigned as error, as well as exceptions to the charge of the court to the jury. The part of the charge of the court of which the defendant most particularly complains reads as follows: "The court instructs the jury that a conductor of a railway train, who commands its movements, directs when it shall start, at what station it shall stop, and has the general management of it, and control over the persons employed upon it, represents the railway company, and is not a fellow-servant with a section foreman in the employ of said company; and if the jury believes from the evidence that John Barrett was the conductor of the train upon which plaintiff was, and had the powers just stated.regarding such train, the court instructs the jury that Barrett was not a fellow-servant with the plaintiff." The disposition of this assignment principally settles the rights of the parties in the case, for if the defendant is liable for the injury sustained by the plaintiff (which the jury has so found), we regard it unnecessary to consider whether many of the other points or rulings of the court were correct or erroneous, for we think the general result would have been unchanged.

Is the defendant liable for the negligence (conceding there was negligence) of John Barrett in causing the injury to plaintiff complained of? From the evidence we gather that plaintiff was in the employment of the defendant, who is a railway corporation, as a section foreman, and whose duty it was to repair all injuries to the road-bed and track of defendant's railway, and to perform such other work of like character as the defendant should direct him to do. On the twenty-third day of August, 1890, he was ordered by the road-master acting for the defendant to go to a certain point on the line of defendant's railway in the county of Pima,

Arizona, taking with him his working force, and grade and lay a temporary track for the purpose of raising an engine. John Barrett was the conductor of the train which was furnished by defendant to take the plaintiff and his working force to and from the place of work. The plaintiff was by Barrett carried to the working point, at which place he and his workingmen worked until about three o'clock, when he was told by Mr. Lloyd, the civil engineer, foreman, and acting road-master, as well as by Barrett, the conductor, to get aboard the work-train, when they would work their way back home. The plaintiff and his men got on the train, and were being carried by it, backing up the track, when the collision with another train occurred, in which the plaintiff sustained the alleged injury. Both Barrett and the plaintiff were in the employment of the same company, and the question whether they were fellow-servants within the reason of the law, and engaged in the same common employment, so as to exempt the company from liability from personal injury caused by the negligence of a co-servant, is the controlling point in the case.

The case of *Railroad Co.* v. *Ross,* 112 U. S. 377, 5 Sup. Ct. Rep. 184, upon which plaintiff seems chiefly to rely, sustains the above charge of the court. The court there clearly makes a distinction in their relation to their common principal between servants of a corporation exercising no supervision over others engaged with them in the same employment and agents of the corporation clothed with the control and management of a distinct department, in which their duty is entirely that of direction and superintendence. "A conductor, having the entire control and management of a railway train, occupies a very different position from the brakemen, the porter, and other subordinate employees. He is in fact, and should be treated as, the personal representative of the corporation, for whose negligence it is responsible to subordinate servants. . . . We know from the manner in which railroads are operated that, subject to the general rules and orders of the directors of the companies, the conductor has the entire control and management of the train to which he is assigned. He directs when it shall start, at what speed it shall run, at what stations it shall stop, and for what length of time, and everything essential to its successful movements. In no

proper sense of the term is he a fellow-servant with the fire-
man, the brakeman, the porters, and the engineer. The latter
are fellow-servants in the running of the train under his di-
rection. As to them and the train he stands in the place of
and represents the corporation." The above doctrine is sus-
tained by very respectable authorities cited in the opinion of
the court in the case, and, if correct, is decisive of the question
under consideration. In the case at bar it was the duty of the
conductor of the train to convey the plaintiff and his work-
men to and from the place where they were to perform their
work or duties, which were entirely distinct and different
from that of Barrett, the conductor. The plaintiff's duties
were in no wise connected with or relating to the train, its
working or management, nor was he in such a position that
he could in any degree control or influence the conductor in
starting, handling, or managing the train. His work was not
upon the train, nor about it, nor had he any connection with
it except to be conveyed by it to and from the place of his
work, and while being so conducted he was injured. We think
there can be no question of Barrett's being the conductor of
the train. That fact was submitted to the jury by the above
charge, and the jury found in the affirmative. He answered
the requirements defined in the case of *Railroad Co.* v. *Ross,*
*supra,* and represented the company; and under the rule of
that case, for personal injuries resulting from his negligent
acts, if any, the company is responsible. The supreme court
of this territory has similarly held in a case where the facts
were much like those in this case. *Hobson* v. *Railroad Co.,*
2 Ariz. 171, 11 Pac. 545. The defendant, questioning the
soundness of this doctrine, refers us to the case of *Tuttle* v.
*Railway Co.,* 122 U. S. 189, 7 Sup. Ct. Rep. 1166. The prin-
ciple announced in that case, "that, in general, when a servant,
in the execution of his master's business, receives an injury
which befalls him from one of the risks incident to the busi-
ness, he cannot hold the master responsible, but must bear the
consequences himself," has no direct bearing upon the ques-
tions just being considered,—viz., whether the conductor, Bar-
rett, and the track foreman, McGill, were fellow-servants
within the reason of the law, and engaged in the same employ-
ment, so as to exempt the company from injury caused by the
negligence of a co-servant. The former announces a general

principle, recognized everywhere and questioned by none, and applies in a general sense to every case of personal injury; while the latter invokes an additional rule in cases where the injury is caused by the negligence of a fellow-servant. The case of *Randall* v. *Railroad Co.,* 109 U. S. 478, 3 Sup. Ct. Rep. 322, is very similar to the case of *Tuttle* v. *Railway Co., supra,* where a switchman was injured by a train where there was a "net-work of tracks." There was no evidence that the track was improperly constructed or that the engine-driver was unfit for his duty. The court there says that the general rule of law is well established that one who enters into the service of another takes upon himself the ordinary risks of the negligence of his fellow-servant in the course of his employment. There the plaintiff was in attendance upon the switches, and must have known all the dangers attendant thereupon, and could look out for the consequences. The law of the case is in perfect harmony with that of *Railroad Co.* v. *Ross, supra.* In the former a brakeman working a switch for his train on one track in a railroad yard is a fellow-servant with the engineer of another train of the same corporation upon an adjacent track. In the latter case the court held that the conductor of a train is not a fellow-servant with the brakeman, engineer, and fireman, but that the brakeman, engineer, and fireman were fellow-servants in the running of the train. In the case at bar there were no such conditions as in the case of *Randall* v. *Railroad Co., supra.* The conductor, with his train, was taking the plaintiff from his work, which was entirely separate and distinct from the work or employment of the conductor. The case of *Armour* v. *Hahn,* 111 U. S. 313, 4 Sup. Ct. Rep. 433, is not an analogous case. A carpenter with years of experience, with one of his comrades, was directed by the foreman to push the joist out on some projecting sticks of timber, but he did not direct him to go out. If the carpenter had kept both feet inside the wall he could have pushed the joist as directed without danger, but he got out onto the projecting sticks, which gave way. There was no evidence tending to prove negligence on the part of the defendant or his superintendent or his foreman. The plaintiff, McGill, was upon the train, not in the discharge of any duty connected with the running or management of it, but was there being carried from his work to another point on

the line. The conductor hurriedly directed him and his men to get on the train, so as to get his train out of the reach of an approaching train, which was due and on time. The plaintiff had no choice in the matter. He considered, and he had a right so to do, that if he did not comply with the direction of the conductor, he would be left at a long distance from the station, to find his way there as best he could.

Upon the question of negligence of Conductor Barrett resulting in the injury of plaintiff the testimony is conflicting. The jury found that there was negligence, and, further, that plaintiff was not at fault. We cannot disturb the verdict on that ground.

A further consideration of the other assignments would lengthen the discussion without any beneficial results. We are inclined to the opinion that no error was committed by the lower court which could justify a reversal of the case.

The jury returned a verdict of twenty-five thousand dollars in favor of the plaintiff. We infer that this amount was rendered upon the theory that the plaintiff was permanently injured, so as to incapacitate him from earning a livelihood for himself and family. We do not think the testimony warrants such a conclusion, or that the plaintiff's injury amounted to that sum, and therefore consider the verdict excessive, and are of the opinion that the judgment should be reduced to the sum of fifteen thousand dollars. The district court is therefore hereby directed to modify its judgment by rendering judgment against the defendant and in favor of the plaintiff for the sum of fifteen thousand dollars, provided the plaintiff shall elect to remit the sum of ten thousand dollars from his former judgment; and in case he does not so elect a new trial of the whole case is ordered.

Gooding, C. J., and Kibbey, J., concur.