[Civil No. 342.   Filed February 10, 1896.]

[44 Pac. 302.]

## SOUTHERN PACIFIC COMPANY, Defendant and Appellant, v. WILLIAM McGILL, Plaintiff and Appellee.

1. MASTER AND SERVANT—ASSUMPTION OF RISK.—A person entering the service of a corporation assumes all risk naturally incident to his employment, including the danger which may arise from the negligence of a fellow-servant.

2. SAME—INJURY—MASTER'S LIABILITY—FELLOW-SERVANTS—GRADATION IN EMPLOYMENT—PRINCIPAL.—The master's liability does not depend upon gradations in the employment, unless the superiority of the person causing the injury was such as to make him principal or vice-principal.

3. SAME—SAME—SAME—SAME — DIFFERENT DEPARTMENTS.—The liability of the master does not depend upon the fact that the servant injured may be doing work not identical with that of the wrongdoer. The test is, the servant must be employed in different departments which in themselves are so distinct and separate as to preclude the probability of contact and of danger of injury by the negligent performance of the duties of the servant in the other department.

4. SAME—SAME—SAME—SAME—CONDUCTOR ON WORK-TRAIN — SECTION FOREMAN—COMMON SUPERIOR.—The conductor of a work-train and a section foreman, both engaged in clearing a piece of track under the direction of a common master, are fellow-servants, and the fore-

man cannot recover of the railroad company for injuries resulting from the negligence of such conductor occurring while carrying the foreman from such place of employment.

BETHUNE, J., and ROUSE, J., concurring specially.

ON REHEARING. For former opinion see 4 Ariz. 116, 33 Pac. 821.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. R. E. Sloan, Judge. Reversed.

Statement of facts:—

The appellee (hereinafter called the "plaintiff") was injured in a collision between a work-train and a regular passenger-train on the railroad of appellant (hereinafter called the "defendant") on August 24, 1890. At the time of the injury the plaintiff was in the employment of the defendant in the capacity of section foreman. His duties were to repair the roadbed, clean up wrecks, and do other similar work under the supervision and control of a roadmaster, from whom he received all orders. Some twelve or thirteen miles of the company's track was allotted to his care in respect to such work. He was directed by the roadmaster to go to a point on the track about six or seven miles west of a section called "Pantano," and within that part of the track allotted to his care in the respect mentioned, and there to grade and lay a track in order to raise an engine which had been derailed and wrecked by reason of a washout. He boarded a work-train used for the purpose, with his gang of men and tools, and went to this point, and was there engaged in the work of raising said engine until about three o'clock in the afternoon of that day, August 24, 1890. The regular passenger-train going east, called "No. 19," was due at this point at about that time, and in order to clear the track for its safe passage the work-train which carried the plaintiff and his men to the point commenced to back up east, towards Pantano, for the purpose of switching. The civil engineer (Lloyd), who, in the absence of the roadmaster (Doyle), was in charge of plaintiff and the men under him, directed plaintiff and his men to get on the work-train. The plaintiff was in the act of doing so. when the conductor of this train came along, and said to the plaintiff: "D—n it, McGill; why don't you get your men on the train. 19 will be on top of us before we

start." Thereupon plaintiff boarded the train, which then commenced to back up at the rate of ten or twelve miles per hour. It had not gone over three quarters of a mile when it collided with the regular passenger-train, called "No. 20," which was proceeding west behind its schedule time. The plaintiff was seriously injured about the head in the collision, and brought this action to recover his damages. The only charge of negligence made in the complaint is the one against Barrett, the conductor of the work-train. It is charged that he ran the train negligently, and with want of care and attention to his duty, and so caused the accident. The jury gave the plaintiff a verdict in the sum of twenty-five thousand dollars. The case was brought to this court on appeal, and the judgment was affirmed upon the plaintiff reducing it to fifteen thousand dollars. *McGill* v. *Southern Pacific Co.*, 4 Ariz. 116, 33 Pac. 821. The court, however, granted a rehearing in the case, and this decision is made upon such rehearing.

Frank Cox, J. A. Zabriskie, Maxwell & Satterwhite, and W. H. Barnes, for Appellant.

The plaintiff's case was tried upon the lines, and is founded entirely upon the doctrine, laid down in the Ross case; and if the Ross case is overruled or limited to such extent as to change the doctrine, we submit this case must be overruled.

Does the case of *Baltimore etc. R. R. Co.* v. *Baugh,* 149 U. S. 368, 13 Sup. Ct. Rep. 914, 37 L. Ed. 772, overrule the Ross case, or limit it to such an extent as to change the doctrine? Judge Field says of the Baugh case in his dissenting opinion, page 410: "The opinion of the majority not only limits and narrows the doctrine of the Ross case, but in effect denies, even with the limitations placed by them upon it, the correctness of its general doctrine, and asserts that the risks which an employee of a company assumes from the service which he undertakes, is from the negligence from one in immediate control as well as from a co-worker, and that there is no superintending agency for which a corporation is liable unless it extend to an entire department of service."

In *Louisville etc. R. R. Co.* v. *Petty,* 67 Miss. 255, 19 Am. St. Rep. 304, 7 South. 351, the court says: "No rule of the common law is more universally affirmed than the non-lia-

bility of the master to one of its servants for an injury caused
by the negligence of a fellow-servant, and it was distinctly an-
nounced in this court more than sixteen years ago that all
employees of a railroad company engaged in merely opera-
tive service are fellow-servants.''

In *Knabath* v. *Oregon Short Line R. R. Co.,* 21 Or. 136,
27 Pac. 91, decided in 1891, the court held: ''A section hand
riding on a work train from one place to another under the
orders of a roadmaster is a fellow-servant of the conductor
and engineer.''

In *Galveston etc. R. R. Co.* v. *Smith,* 76 Tex. 611, 18 Am.
St. Rep. 78, 13 S. W. 562, it was held that ''A roadmaster
in charge of a work-train, who had the power to employ and
discharge the men on his train, and who moved the train so
negligently as to have a collision with another train, in which
a section hand who was riding upon the work-train was in-
jured, was a fellow-servant of the section hand, and his negli-
gence could not be considered the negligence of the company.''
The court said: ''It has been held in this state that the negli-
gence of the conductor of the train having control of its
operation is not chargeable to the company because he is a
fellow-servant of the subordinate operatives. Superiority of
work and authority in the service is no test.'' Citing *Robin-
son* v. *Railroad Co.,* 46 Tex. 550.

The cases of *Baltimore etc. R. R. Co.* v. *Baugh,* 149 U. S.
368, 13 Sup. Ct. Rep. 914; *Randall* v. *Baltimore etc. R. R. Co.,*
109 U. S. 478, 3 Sup. Ct. Rep. 322; *Quebec Steamship Co.* v.
*Merchant,* 133 U. S. 375, 10 Sup. Ct. Rep. 397, are decisive
of the proposition of McGill and Barrett being fellow-servants
within the meaning of the law.

Francis J. Heney, G. C. Israel, and Rochester Ford, for
Appellee.

BAKER, C. J. (after stating the facts).—We decline to
pass upon the question of the negligence of Barrett, the con-
ductor. The evidence is conflicting in that particular. Be-
sides, that question is not decisive of the case.

The following instruction was given to the jury for plain-
tiff: ''The court instructs the jury that the conductor of a
railway train, who commands its movements, directs when

it shall start, at what station it shall stop, and has the general management of it, and control over the persons employed on it, represents the railway company; and is not a fellow-servant with a section foreman in the employ of said company. If the jury believe from the evidence that John Barrett was the conductor of the train upon which plaintiff was, and had the powers just stated regarding such train, the court instructs the jury that Barrett was not a fellow-servant with the plaintiff.'' This instruction was not altered, changed, or modified by any instruction subsequently given, and, being objected to, and duly assigned as error, constitutes the pivotal point in the case. There is an endless diversity of opinion upon this ''fellow-servant'' doctrine in the decisions of the various courts in this country. In the states of Massachusetts, Maryland, Maine, Minnesota, Indiana, Iowa, North Carolina, California, Texas, Arkansas, Pennsylvania, Rhode Island, New York, and Wisconsin it is generally held, as between laborers upon a railroad track and the conductor of a train, the relationship of fellow-servants exists. In Missouri, Ohio, Kentucky, and Illinois this doctrine is denied. The cases are too numerous to cite, and it would be an idle effort to attempt to reconcile or distinguish them. I can do no better than to deduce one or two propositions applicable to the facts at bar, which the decided weight of all cases authorizes:—

(1) A person entering the service of a corporation assumes all the risk naturally incident to his employment, including the danger which may arise from the negligence of a fellow-servant;

(2) That the master's liability does not depend upon gradations in the employment, unless the superiority of the person causing the injury was such as to make him principal or vice-principal;

(3) The liability of the master does not depend upon the fact that the servant injured may be doing work not identical with that of the wrong-doer. The test is, the servant must be employed in different departments which in themselves are so distinct and separate as to preclude the probability of contact and of danger of injury by the negligent performance of the duties of the servant in the other department.

In this jurisdiction we are governed by the decisions of the United States supreme court, and this case is to be deter-

mined upon the principles set out in the following cases decided in that tribunal: *Randall* v. *Railroad Co.*, 109 U. S. 478, 3 Sup. Ct. Rep. 322; *Railroad Co.* v. *Baugh*, 149 U. S. 368, 13 Sup. Ct. Rep. 914; *Railroad Co.* v. *Hambly*, 154 U. S. 349, 14 Sup. Ct. Rep. 983. In *Randall* v. *Railroad Co.*, a brakeman was injured by a passing locomotive while working a switch. The court said: ''Nor is it necessary, for the purpose of this case, to undertake to lay down a precise and exhaustive definition of the general rule in this respect, or to weigh the conflicting views which have prevailed in the courts of the several states, because persons standing in such a relation to one another as did this plaintiff and the engineman of the other train are fellow-servants, according to the very great preponderance of judicial authority in this country, as well as the uniform course of decisions in the house of lords, and in the English and Irish courts, as clearly shown by the cases cited in the margin. They are employed and paid by the same master. The duties of the two bring them to work at the same place, and at the same time; so that the negligence of the one in doing his work may injure the other in doing his work. Their separate services have an immediate common object,—the moving of the trains. Neither works under the orders or control of the other. Each, by entering into his contract of service, takes the risk of the negligence of the other in performing his service; and neither can maintain an action for an injury caused by such negligence against the corporation, their common master.'' In *Railroad Co.* v. *Baugh* the court said: ''But this rule [different department rule] can only be fairly applied when the different branches or departments of service are in and of themselves separate and distinct. Thus, between the law department of a railway corporation and the operating department there is a natural and distinct separation; one which makes the two departments like two independent kinds of business, in which the one employer and master is engaged. So, oftentimes therein, in the affairs of such corporation which may be called a manufacturing or a repair department, and another strictly operating department, these two departments are, in their relations to each other, as distinct and separate as though the work of each was carried on by a separate corporation. And from this natural separation flows the rule that he who is

placed in charge of such separate branch of service, who alone superintends and has the control of it, is, as to it, in the place of the master. But this is a very different proposition from that which affirms that each separate piece of work in one of these branches of service is a distinct department, and gives to the individual having control of that piece of work the position of vice-principal or representative of the master.'' The decision in *Railroad Co.* v. *Hambly, supra,* is the last utterance of the United States supreme court upon this question. The plaintiff was a common laborer upon a culvert of the company, and while at work was injured by the locomotive of a moving passenger-train on the company's road. The court said: ''As a laborer upon a railroad track, either in switching trains or repairing the track, is constantly exposed to the danger of passing trains, and bound to look out for them, any negligence in the management of such trains is a risk which may or should be contemplated by him in entering upon the service of the company. This is probably the most satisfactory test of liability. If the departments of the two servants are so far separated from each other that the possibility of coming in contact, and hence of incurring danger from the negligent performance of the duties of such other department, could not be said to be within the contemplation of the person injured, the doctrine of fellow-servant should not apply.'' Again, the court said: ''Cases arising between persons engaged in the same identical service—as, for instance, between the brakemen of the same train, or two seamen of equal rank in the same ship—are comparatively rare. In a large majority of cases there is some distinction either in respect to grade of service or in the nature of their employments. Courts, however, have been reluctant to recognize these distinctions, unless the superiority of the person causing the injury was such as to put him rather in the category of principal than agent; as, for example, the superintendent of a factory or railway, and the employments were so far different that, although paid by the same master, the two servants were brought no further in contact with each other than as if they had been employed by different principals.''

I have quoted extensively from these cases, because their reasoning applies with great force to the facts in hand. But the truth is, every case depends upon its own circumstances.

No hard-and-fast line can be drawn which will suffice for every case. In the case at bar the plaintiff and Barrett, the conductor, were brought together at the same time and place, and closely associated in the discharge of their respective duties. The very work which the plaintiff engaged to do necessitated the constant use of a train, such as the one in use at the time of the collision, to transport laborers, tools, materials, supplies, etc., to the place of operations; and he must be held to have contemplated its use when he accepted the employment. He was at work when riding upon this train in going to and from the point where the wreck occurred, just as much as he was when he was actually engaged in raising the derailed engine. Both he and the conductor were engaged in a common purpose and object,—the clearing of the track and the raising of the fallen engine. The labors of both contributed to and were intended to effect that immediate and present result. Both had a common master. That there was some gradation—some difference in the work of the two —is not the test. The departments must be so distinct and separate within themselves as to preclude the probability of contact and of danger to one servant in one department by reason of the negligence of another servant in another department. This cannot be said of the plaintiff's and Barrett's employment. The plaintiff's labors constantly exposed him to the dangers of running and moving the work-train, and he must be held to have assumed the risk of such dangers. As to who was his immediate superior, the testimony is unclouded. The roadmaster (Doyle), and, in his absence, the civil engineer (Lloyd), stood in such relationship. Barrett, the conductor, had no control over him, and the overtemperate expression attributed to Barrett by the testimony cannot be construed so as to indicate the plaintiff's subordination to him, or otherwise than as a notice to plaintiff of the necessity to act promptly in getting on the train. He had already received orders to board the train from Lloyd. I therefore need not consider the "subordination" idea, since it is not in the case.

It is quite certain that the court, in its former decision in the case (4 Ariz. 116, 33 Pac. 821) erred in applying the Ross case (*Railroad Co.* v. *Ross,* 112 U. S. 377, 5 Sup. Ct. Rep. 184) to the facts in this record. In the Ross case the engineer of a

freight-train was injured by the joint negligence of the conductor of his own train and that of a gravel-train, with which it collided. In that case the conductor commanded the movements of the train, directed when it was to start, at what stations it should stop, and at what speed it should run, and had the general management of it and control of the persons employed on it. In such case it was held that the conductor represented the company as to the engineer on the train. The evidence in this case is to the effect that the general management of this special train was directly in the hands of Noble, the division superintendent, and not Barrett, the conductor. The telegraph orders of the division superintendent providing for the movements of the train on the day of the accident were very minute and precise. Besides, the plaintiff was not at work upon the train as one engaged in running it, and Barrett had no control over him. The liability of the company in the Ross case was placed upon the ground that the person sustaining the injury was under the direct authority and control of the person by whose negligence it was caused, —an element which is entirely wanting in this case. The facts, therefore, which made the conductor in the Ross case the *alter ego* or vice-principal of the company are not present in this case. It is but just to the court to observe that since the former decision was made the Ross case had been practically limited and narrowed to its own facts by the subsequent case of *Railroad Co.* v. *Baugh, supra,* and it is very probable that if that case and the case of *Railroad Co.* v. *Hambly, supra,* had been announced at the time of the first decision in this case, it would have been substantially as the present one.

The giving of the instructions quoted was reversible error, since, upon the facts, the conductor of the work-train and the plaintiff were fellow-servants. The judgment is reversed and a new trial is ordered.

Hawkins, J., concurs.

BETHUNE, J. (specially concurring).—I concur in the reversal of the judgment of the lower court on the grounds stated in the foregoing opinion, but desire to add that, in addition to the grounds for reversal therein set out, it clearly appears from the record that defendant attempted to prove

that the conductor (Barrett) of the work-train had received such information from the plaintiff himself as to the washed-out and impassable condition of the railroad east of the point at which the repairing of the road was being done immediately before the collision in which plaintiff was injured as to justify him in backing his train, as he did, in that direction, to avoid a collision with the regular train from the west, which attempt on the part of defendant was prevented and refused by the court on the ground that McGill, the plaintiff, was not a source from which the conductor was authorized to receive information which would bind the defendant. While this would undoubtedly be true under ordinary circumstances in cases where the informant is not a party to the suit, in this case the plaintiff is certainly bound by any defect or any conditions in the road or the cars or machinery of which he had knowledge, and certainly of any and all conditions which would render the occupation of himself and co-laborers extraordinarily hazardous. I think the refusal of the court to allow the defendant to prove the declarations of McGill to the conductor, as to what he knew of the condition of the track was an error, for which alone the case should be reversed.

Rouse, J., concurs in the above.