[Civil No. 1368.   Filed July 9, 1914.]

[141 Pac. 740.]

JOSEPH · STRINKER, Appellant, v. RAY CONSOLI-
DATED COPPER COMPANY, a Corporation, Appellee.

1. MASTER AND SERVANT—ACTION FOR INJURY TO SERVANT—QUESTION
   FOR JURY—FELLOW-SERVANTS.—In an action against a copper com-
   pany for an injury to the foreman of a structural steel gang caused
   by the hoist engineer raising a steel girder too high, causing it to
   fall upon him, whether plaintiff and the engineer were fellow-
   servants was a question of fact for the jury.

   [As to who is a fellow-servant and who a vice-principal, see notes
   in 67 Am. Dec. 588; 75 Am. St. Rep. 584.]

2. MASTER AND SERVANT—LIABILITY FOR INJURY TO SERVANT—FELLOW-
   SERVANTS—COMPETENCY.—A master must use proper diligence in
   the employment of competent men and, after the employment, must
   keep himself advised as to their fitness and not retain in his em-
   ployment servants who are incompetent.

3. MASTER AND SERVANT—ACTION FOR INJURY TO SERVANT—SUFFICIENCY
   OF EVIDENCE.—In an action for an injury caused by the negligence
   of a fellow-servant, the mere fact that such servant was negligent
   on the occasion of the injury was not sufficient to prove incompetency
   or notice to the master.

APPEAL from a judgment of the Superior Court of the
County of Maricopa. J. C. Phillips, Judge. Reversed and
remanded.

The facts are stated in the opinion.

Messrs. Struckmeyer & Jenckes and Messrs. Stoneman &
Ling, for Appellant.

Messrs. Chalmers & Kent and Mr. Wm. H. King, for
Appellee.

PER CURIAM.—The appellant, plaintiff below, sued the
appellee, defendant, for damages for personal injury alleged
to have occurred on January 23, 1912, and while he was in
the employment of the defendant company. The cause of
action is set forth in two counts. In one count the injury is

alleged to have been caused by a servant or employee of the defendant, to wit, an engineer, and in the other count the injury is alleged to have been occasioned by the negligence of the defendant in employing and retaining in its employ an engineer incompetent, unskillful and unqualified to properly render and perform the services required of him.

Demurrers to the complaint were overruled. Defendant answered, setting up the defenses of contributory negligence, assumed risk and carelessness of a fellow-servant.

The case was tried to a jury. At the close of the plaintiff's case, on motion of defendant, the first count was dismissed by the court on the ground that the evidence showed that the injury was caused by the carelessness of a fellow-servant. The defendant introduced its evidence, and plaintiff introduced evidence in rebuttal. After both parties had rested, the defendant moved for a directed verdict in its favor which was granted by the court. Judgment upon the verdict was entered awarding costs to defendant.

Plaintiff assigns 20 errors which he says the trial court committed to his prejudice and damage. As we view the case, the only questions necessary for us to pass upon are: (1) Did the court err in dismissing the first count, and (2) in granting the instructed verdict on the second count?

The pleadings disclose that the engineer, through whose negligence the injury is alleged to have occurred, and the plaintiff were both employees of the common employer, the defendant. The evidence of the plaintiff alone was before the court when the court determined therefrom that the engineer and the plaintiff were fellow-servants and ordered the dismissal of the first count of the complaint. Upon the determination that plaintiff was injured because of the negligence of a fellow-servant, the court evidently took the view that plaintiff assumed the risks arising in his employment from the negligence of a fellow-servant, and that it was a question of law to be passed upon by the court.

At the time the motion to dismiss the first count was granted, evidence had been introduced by the plaintiff to the following effect, and for the purpose of the appeal it must be taken as true: The plaintiff at the time of the injury had been working for the defendant as a structural steel man; he had charge of what was known as the "Bull Gang," consist-

ing of himself and four or five other men; the duties of this gang of men were rather miscellaneous; as one witness testified, it was supposed "to do anything." In other words, as soon as one job of structural steel work was completed, it was moved on to another of cognate character, but not the same always in detail. For three days prior to the date of injury this gang had been employed in placing on top of ore bins steel girders weighing about 1,900 pounds. These girders had been raised 40 feet from the ground to the top of bins. This gang, without any outside help, had, by means of blocks and pulleys operated by hand power, lifted in place all of the girders, except one, when on the 23d day of January, 1912, the superintendent of the defendant told the plaintiff to get the last girder out of the way "as quick as you can." This girder was on the railroad track, and the superintendent said, "Joe [plaintiff], get that thing [girder] out of there so the cars could get in." Lee Hetrick, the yardmaster of the defendant, as such had under his control and charge a Brown hoist, and he suggested to plaintiff the use of this piece of machinery to raise the last girder. The Brown hoist gang and the Bull gang up to this time had never been brought together. The hoist was brought to the Bull gang by Hetrick and by him and plaintiff was placed for use in raising the girder. The men accompanying the Brown hoist were Hetrick, the engineer, and a Mexican. The hoist was operated by means of a locomotive engine, in charge of the engineer that accompanied it and who was one of the Brown hoist gang. The boom of the hoist was not long enough for the purpose of raising the girder, and Hetrick and one of the Bull gang men procured a telephone pole and spliced it on to the boom, extending the length of boom some 30 feet. The pulleys, blocks and cable were adjusted by plaintiff and Hetrick. One end of the cable was attached to a drum and the other end was, by means of an iron or steel grapple or hook, attached to the girder. Plaintiff had control of the end fastened to the girder, while the engineer of the locomotive engine operated the drum by means of power obtained from engine, so that, by winding the cable around the drum, the girder could be lifted from the ground. The engine was about 30 feet from the girder. When all was ready to begin the raising of the girder, plaintiff, having placed on girder

the hook on his end of cable, signaled the engineer to lift girder six inches. The signal was made by hand and also by word of mouth. Plaintiff said to engineer, "Raise it up six inches." The purpose of raising girder six inches was that a block might be placed under it, giving space to wrap the end of cable around girder securely, so that it might be raised and put in place on top of bin. The engineer, instead of raising girder six inches, as he was told and signaled to do, suddenly jerked it up to a height of six feet. The hook slipped off it, and it fell, striking plaintiff, breaking one of his legs, and injuring the other. If the girder had been lifted six inches only, the hook would not have slipped off.

Plaintiff did not see the engineer before he was hurt and did not know who was the engineer in charge of engine when he was hurt. The Brown hoist crew and the structural crew had never come together before. The former crew was loaned to the latter just for the one purpose, the handling of the last girder. Not only new instrumentalities, but new faces, were injected into the structural steel gang for the purpose of hastening the removal of this last girder from the railroad track so that it might be used. The Brown hoist and the crew that operated it had been used in loading cars with ore, but had never been employed in iron work construction before. They were brought from ore dump for this particular job. The two crews were engaged in a different line of employment and had not come together in their work during the time plaintiff had worked for defendant, about 18 months, and would not have come together on this special occasion, except for the expedition required in doing this particular job that another department of defendant's work might not be obstructed. It is not an unfair inference, from the evidence, that they came together at this time at the instance of the superintendent of defendant, although that fact is not directly sworn to by any witness. He told plaintiff to hurry up and get the girder out of the way of cars, and soon thereafter the yardmaster, Hetrick, was on the ground with the Brown hoist and its crew joining in the work of placing the girder on top of bin. The Brown hoist crew was under the control of and received its orders from the yardmaster. Did the fact that, for the instant, the engineer was acting on signals from the plaintiff constitute him and plaintiff fellow-

servants, and, if so, is it a question of fact to be submitted to the jury, or is it a question of law to be determined by the court, as was done in this case?

We may say that the courts are not agreed as to what constitutes fellow service. Many of them have adopted the narrow and somewhat harsh rule laid down by Chief Justice Shaw in *Farwell* v. *Boston & W. R. Corp.*, 4 Met. (Mass.) 49, 38 Am. Dec. 339, decided in 1842, holding that all the employees of a common master were fellow-servants. Other courts of equal learning and respectability have made association and opportunity to watch over each other the test of fellow service. These latter states have adopted the so-called "departmental doctrine." Labatt, in his exhaustive and learned work, "Master and Servant," at section 1425, says:

"The decisions which actually turn upon it (departmental doctrine) seem to be confined to Georgia, Illinois, Missouri, Nebraska, Louisiana, Virginia, Washington, West Virginia, Utah, Arizona and such federal courts as have avowedly followed the local rule."

*Southern Pacific Co.* v. *McGill*, 5 Ariz. 36, 44 Pac. 302, relied upon by defendant as authority sustaining the court in passing upon the question we have here, as a question of law, has its interesting features. The question in that case was as to whether a section foreman and the conductor upon whose train he was riding at the time of the accident were fellow-servants. The trial court submitted the question to a jury. This action of the trial court was approved by a unanimous court in a well-considered opinion reported in *McGill* v. *Southern Pacific Co.*, 4 Ariz. 116, 33 Pac. 821. Upon a motion for a rehearing before the same court, with a change in its personnel, however, the decision was that they were fellow-servants and that the trial court erred in submitting the question to the jury. In both opinions the departmental doctrine is recognized, the first following the Hobson case, hereinafter discussed, and in the last the court said:

" . . . The truth is every case depends upon its own circumstances. No hard-and-fast line can be drawn which will suffice for every case."

The fact is that the courts have over and over, again and again, refused to try to lay down any certain or definite rule

by which fellow service may be determined, but have been contented largely in letting "every case depend upon its own circumstances," as was done in the McGill case.

When it is taken into consideration that this was a hurry-up job, and a departure from the usual way of performing, it was essential, suddenly bringing into co-operation crews from different lines of employment with no previous opportunity of exercising mutual influence on each other promotive of proper caution, it would seem that it should "depend upon its own circumstances." To submit the question to the jury accords with the earliest pronouncement of the territorial supreme court, and is in line with the legislation of the country either establishing the departmental rule, as in California (*Judd* v. *Letts,* 158 Cal. 359, 41 L. R. A. (N. S.) 156, 111 Pac. 12), or entirely abrogating the common-law rule of fellow-servant, as was done by the Arizona Constitution of 1912.

Plaintiff's cause of action, if he has one, accrued on January 23, 1912, and all defenses thereto existing before the adoption of the Constitution are preserved. Therefore the provision of the state Constitution forever abrogating the doctrine of fellow-servant is not involved in this case.

The question is whether plaintiff and the hoist engineer were as a fact, or as a matter of law, fellow-servants according to the rule recognized and existing under the territorial government of Arizona at the time of the injury.

The rule adopted by the supreme court of the territory of Arizona is the Illinois rule. This rule was adopted in *Hobson* v. *N. M. & Ariz. R. R. Co.,* 2 Ariz. 171, 11 Pac. 545, filed August 2, 1886. The court, on page 180 (Pac. p. 549), quotes at length from *C. & N. W. R. R. Co.* v. *Moranda,* 93 Ill. 302, 34 Am. Rep. 168, and cites and comments upon a number of cases supporting the "separate department" rule. The court states:

"The real issue in this case is, as given in the instructions of the court, as follows: 'If the jury believe from the evidence in this case, and from all the circumstances in proof, that the plaintiff was employed by the defendant as a teamster for the purpose of drawing ties, and not employed as a hand on the train, . . . then the court instructs you that the plaintiff would not be considered in law in the same line of

employment as the engine-driver. If you believe, however, from the evidence, that the plaintiff was employed by the defendant for the purpose of driving a team, and was also employed, and it was a part of his duty, to be connected with, and he formed a part of the working force of and on the construction train, then the court instructs you that it would be considered in law that he was employed in the same line of employment as the engine-driver; and in that case you would find for the defendant on that point, unless you believe from the evidence that the engine-driver was incompetent, and that such incompetence was known to the defendant prior to his employment, or that such incompetency has been shown by the evidence to have been known to the defendant by some agent or officer of the defendant, prior to the accident, who had a right to remove him, and, having the power to remove him, failed to remove him.' This was the gist of the case, and we take it that no other error would have worked an injury to defendant. *Chicago etc. Ry. Co.* v. *Ross,* 112 U. S. 377 [28 L. Ed. 787, 5 Sup. Ct. Rep. 184]; *Brobst* v. *Brock,* 10 Wall. 519 [19 L. Ed. 1002].''

The rule thus recognized has never been repudiated by the territorial supreme court. In the Moranda case (93 Ill. 302, 34 Am. Rep. 168), in the opinion of the court, page 185 of American Reports, it is said:

''It will be seen, by the cases cited, that, in all the cases wherein the right of action has been denied upon the ground that the injured servant and the offending servant were fellow-servants, the facts show that they were brought into personal consociation by their ordinary duties, or that at the time of the injury they were actually, co-operating in some particular work. And it also appears that in the cases where the action has been sustained no such relations existed. In the latter cases, this court has said they were not employed 'in the same department of labor,' and that the one is 'not in the same line of employment with the other,' '' etc.

In *Chicago & Eastern Ill. R. R. Co.* v. *Kneirim,* 152 Ill. 458, 43 Am. St. Rep. 259, 39 N. E. 324, two tests of the master's liability under that rule are assumed to exist: First, ''where they are directly co-operating with each other in a particular business in the same line of employment''; and, second, ''where their duties are such as to bring them into habitual

association, so that they may exercise a mutual influence upon each other promotive of proper caution.''

In *Bennett* v. *Chicago City Ry. Co.,* 243 Ill. 420, 430, 90 N. E. 735, 738, the court says:

''Under the decisions it is not sufficient to constitute two persons fellow-servants simply that they are working for the same master, but they must be brought into such relation, either by directly co-operating in the same work at the time of the injury or by their usual and habitual duties, that they may exercise an influence upon each other promotive of their mutual safety.''

A host of Illinois cases are cited as sustaining this principle.

The rule is applied in *Gathman* v. *City of Chicago,* 127 Ill. App. 150, the facts of which, in all essential features, were very similar to the facts in this case. The plaintiff was required to make certain measurements of a bridge attachment. He notified the keeper of the bridge of his duties there and that it would be necessary to make one measurement while the bridge was down and one while it was lifted. Plaintiff told the keeper that he and his helper would go under the bridge and make the first measurement, and, when they were ready to have the bridge raised, the helper would call up from below and notify him. The keeper said all right, and plaintiff and his helper went below to make the measurements. Without warning, and before any signals were given, under the instructions of the keeper and at his direction the operator turned on the power which operated the bridge, and plaintiff was injured. It was insisted that plaintiff and the operator and the keeper were fellow-servants with the plaintiff. The court states that the rule that all servants of a common master are fellow-servants is not accurate; on the contrary, ''the generally prevailing rule that all servants of a common master are fellow-servants was rejected'' in this state, ''and it was held that, where a servant was employed in a department separate and distinct from that of a servant whose negligence caused an injury, the master would be liable.'' *Chicago City Ry. Co.* v. *Leach,* 208 Ill. 198, 100 Am. St. Rep. 216, 70 N. E. 222.

And again: ''The servants of the same master, to be co-employees so as to exempt the master from liability on account of injuries sustained by one resulting from negligence of the

other, shall be directly co-operating with each other in a particular business (i. e., the same line of employment) or their usual duties must bring them into habitual association, so that they may exercise a mutual influence upon each other promotive of proper caution." *Chicago & Alton R. R. Co.* v. *Hoyt,* 122 Ill. 369, 12 N. E. 225.

This rule was adopted in the Hobson case by the territorial supreme court and was in force at the time of the injury.

In the Gathman case, *supra,* the court says, after stating the rule:

"And whether an employee whose negligence brings about the injury is in this sense a fellow-servant of the employee of a common master who is injured is a question of fact to be left to the jury under the above rules, unless the evidence is such that all reasonable minds must reach the conclusion that they stand in the said relation,"—citing *Duffy* v. *Kivilin,* 195 Ill. 630, 63 N. E. 503; *Missouri etc. Co.* v. *Dillon,* 206 Ill. 145, 69 N. E. 12; *Illinois Third Vein Coal Co.* v. *Cioni,* 215 Ill. 583, 74 N. E. 751.

In *Chicago & A. R. R. Co.* v. *Swan,* 176 Ill. 424, 429, 52 N. E. 916, 917, the court says:

"Whether different servants of the same master are fellow-servants, within the legal signification of that term, is a question of fact, to be determined by the jury from all the circumstances of each case. [Citing cases.] The definition of fellow-servants is a question of law. Whether a given case falls within that definition is a question of fact."

In the Hobson case, *supra,* the question was submitted to the jury, and rightly so. In this case the court decided, as a matter of law, that the hoist engineer and plaintiff were fellow-servants of a common master, notwithstanding the undisputed evidence was that these employees were employed in wholly separate departments of the master's business, that plaintiff was engaged in repairing an ore bin, and that the hoist engineer was engaged in operating an engine and hoist. The inference may readily be drawn from this undisputed evidence that the plaintiff and the hoist engineer were or were not fellow-servants at the time of the injury.

Under the rule governing such a matter which obtains in this jurisdiction, and in view of the peculiar facts of this case, we are persuaded that the question presented is mani-

festly one of fact for submission to the jury. In its determination the jury would be required to find whether the negligence of the engineer was one of the risks which the plaintiff should be held to have assumed, and this result would depend on what should be ascertained to be their relation to each other, the extent to which they were brought in contact, and the connection of the duties to each other. In fine, whether or not, at the time plaintiff received the injury complained of, they sustained toward each other the relation of fellow-servants. We therefore conclude that the court erred in withdrawing from the jury the right to ascertain the cause of the accident, and if such accident was caused by the negligence of the engineer, and also the relation in which the engineer stood to the parties when it occurred.

It is the duty of the master to use proper diligence in the employment of competent men to perform the duties for which they are engaged, and after the employment it is also the duty of the master to keep himself advised as to their fitness and not retain in his employment servants who are incompetent. The failure of the corporation to perform its duty in these particulars is in substance the basis upon which appellant seeks to recover in the second count of the complaint.

Drawing from the evidence in the record all reasonable inferences in favor of the plaintiff to be gathered therefrom, the evidence as to the incompetency of the engineer is confined to the happening of the one particular accident which occasioned the injury to the plaintiff. We have not been cited to any case, nor has a somewhat extensive search through the books revealed an authority, wherein it is held that the single act of negligence would prove either incompetency or notice to the master. The simple fact that the engineer on this particular occasion may have been guilty of negligence is not sufficient to authorize the jury to find against the defendant on the second count. *Conrad* v. *Gray,* 109 Ala. 130, 19 South. 398, and cases cited.

If, upon a retrial of this case, the evidence to support the allegations of the second count is not stronger in this particular than the evidence presented in the record before us, we are of opinion that the plaintiff may not predicate error upon

such a disposition of the second count as made by the lower court in the instant case.

Judgment reversed and cause remanded, with directions to grant a new trial.

Application for rehearing denied.